TEXAS MIDLAND RAILROAD COMPANY V. E. J. CROWDER ET AL.

Decided March 21, 1901.

1.—Continuance—Surprise—Amendment of Petition.

Where a continuance is applied for on the ground that plaintiff's amended petition, filed just before the trial, set up new matter which was a surprise to the defendant, the court's action in refusing the continuance will not be reviewed in the absence of the original petition from the record.

2.—Same—Diligence to Be Specifically Shown.

Where an application for a continuance is made in order to obtain the testimony of an absent witness, it should specifically set forth the efforts made to procure his testimony, and a general statement that the applicant had caused "diligent search" to be made for the witness is insufficient.

**3.—Same—Two Trials at Same Term—Jury.**

Where there had been a mistrial, and the court reset the cause for trial again during a week of the term for which no jury had been provided, it was not error to refuse defendant's application for a continuance made on the ground that it was entitled to a jury drawn by the jury commissioners.

**4.—Change of Venue—Error in Refusing Not Shown.**

Unless the action of the trial court in refusing an application for change of venue is clearly shown to be erroneous, it will not be revised on appeal, the credibility of the person making the application, their means of knowledge and the truth of the facts set forth therein, having been duly attacked, and the issue so formed tried by the court as the statute directs. Rev. Stats., art. 1272.

**5.—Jury—Disqualification—Challenge to Array.**

It is not sufficient ground for challenge for cause that certain jurors had heard of two former trials of the case and the result thereof, it not being shown that they were influenced by such information. See opinion for case where a challenge to the array of jurors on the ground of a general bias throughout the county was held to have been properly overruled.

**6.—Damages for Death—Apportionment—Evidence.**

In an action by the wife and children to recover for death of the husband and father, evidence that one of the daughters was afflicted, one limb being paralyzed, and that the father kept a horse and buggy mostly on account of sending her to school, was admissible under article 3037, Revised Statutes, in order to enable the jury to make a proper apportionment of the damages, and if defendant feared such evidence would operate in other ways to its prejudice, it should have requested a charge limiting its effect.

**7.—Contributory Negligence—Railway Company—Person Walking on Track.**

It is presumed that everyone will act with due care, and negligence will not be imputed to a person because he fails to anticipate culpable negligence on the part of others,—such as the moving of a train down the track on which such person is walking, without any signals or warning of its approach. See case wherein deceased, run over by a train at a place habitually used by pedestrians, is held not to have been shown guilty of contributory negligence.

**8.—Verdict—Damages for Death—Excessiveness.**

In actions of damage for the death of a person, the amount of the damages is left to the discretion of the jury, and unless such discretion is abused, the appellate court is not warranted in disturbing the verdict.

Appeal from Delta. Tried below before Hon. L. A. Clark.

*Perkins, Gilbert & Perkins, Charles W. Ogden, A. H. Dashiell,* and *James Patterson,* for appellants.

*Hazelwood & Smith, W S. Bannister, Newman Philips,* and *Ed H. Bennett,* for appellees.

RAINEY, Associate Justice.—Suit by appellees against appellant to recover damages for the negligent killing of the husband and father of appellees. Defendant answered by general denial and contributory negligence. The cause was finally tried at the June term, 1900, and resulted in a verdict for appellees.

*Conclusions of Fact.*—Appellant's line of railway passed through the western portion of the corporate limits of the town of Cooper, and its depot and switch yards were within the corporate limits; its main line

was ballasted with "gumbo," which is black dirt, burned for the purpose of making ballast; at the time deceased was killed the streets and spaces between the tracks were muddy; the railway passed through the town at a slight angle from southwest to northeast, but was commonly spoken of as running north to south; the streets of the town run at right angles, and the blocks next to the railway were 300 feet square and the streets 60 feet wide; the yard limits of defendant's road are about 3000 feet long, and the main track runs on the east side of the depot, and there were four side tracks on the west side; Cooper is an incorporated town of about 2000 population; the business portion of the town is about 2000 feet east of appellant's depot; deceased lived on the corner of Geneva and Mattie streets, about 300 feet east of defendant's line of road, and had lived there several years prior to his death; he was 52 years old, six feet high, healthy, and had been married twenty-five years, and left appellee, E. J. Crowder, as his surviving widow, and the balance of the appellees as his children, surviving him at the time of his death, and his father and mother were dead.

Appellant did not keep a switch engine at Cooper, and the local freight trains did their own switching, which was well known to deceased. The regular arriving time of the local freight, going south in the morning, was 6:30 o'clock; on the particular morning in question it arrived a very few minutes late, and placed some local cars of freight at the depot to be unloaded. The conductor and one of the brakemen proceeded to unload this freight, which was a part of their duty, and the engineer, fireman, and one brakeman took the engine and went south from the depot to the yards, to do their switching; they went onto the side track and pulled out some cars and placed two of them on the main line, and then put the others back on the side track, and then came out on the main line and hitched onto the two cars there, and then backed to the depot. It was a bright morning and the sun was shining. The deceased had left his house, about 175 yards distant from the track, going down to the yards, to finish loading a load of bois d'arc posts, and had told the colored man to come on, as he was in a hurry. He walked west to the yard, approaching at an obtuse angle, and it was an open prairie between him and the entire length of the yards; the engine and cars that it was handling being to his left as he approached the track and the depot, and the car that he was going to load being to his right. He reached the track and stepped onto the main track and turned north towards the depot, walking probably on the ends of the ties. The body was found about sixty-seven feet from where Crowder, the deceased, reached the track, and his hat and ax were something like ten steps south of where the body was found, the body having been turned over and dragged by the cars, so that he had traveled approximately thirty or forty feet after getting on the track before he was struck. The track was elevated two or three feet above the ground, and the engine and cars were in plain view from the point where he stepped upon the track, there being nothing to prevent him from seeing it. The train was being

operated about four or five miles an hour, and deceased was walking at an ordinary gait. The engineer was on the right hand side of his engine, as is customary, looking back. The fireman was putting in coal part of the time, and part of the time looking out. Neither of them saw deceased, and the brakeman, whose duty it was to couple the cars, got off the engine at the lower part of the yard to couple on the two cars, and got on the car next to the engine, holding to the ladder on the west side of the car, to ride back to the depot to make the coupling there when the train was reached. Therefore he did not see the deceased. None of the train crew knew that deceased was struck until told by other parties. When deceased was approaching the track the engine and cars were apparently standing at or near the south end of the switch. It is not shown definitely how near he was to the track when the engine started to back down. The wind was blowing from the north. The whistle of the engine was not blown nor the bell ringing. Had a proper lookout been kept, deceased could have been seen by the operatives in time to have averted the injury. The track where deceased was walking when struck had for several years been habitually used by pedestrians, which was known to the management, or would have been known by ordinary care. The testimony showed that deceased had no regular occupation; he was a trader. The only testimony as to his earning capacity was that of the wife, who estimated from what he spent on his family that he earned on an average from $125 to $150 per month.

*Opinion.*—The appellant complains of the action of the court in overruling its application for continuance for the want of the testimony of E. H. R. Green and W. A. Hope. In the application it is charged that plaintiff, by amended petition filed just before the trial, set up new matter which enlarges the scope of the evidence on a material issue, which surprised appellant, and which new phase of the case it was not able to meet without the testimony of Green, who was absent from the State, and whose testimony could not be obtained in time for a trial at that term of court. The original petition is not incorporated in the record, and we are therefore unable to determine the merits of the alleged surprise. In the absence of the original petition, the presumption will be indulged in favor of the correctness of the ruling refusing the continuance on the ground of surprise. Railway v. Newburn, 60 S. W. Rep., 429.

As to the witness Hope, the application for continuance fails to show the character of diligence used to ascertain the whereabouts of said witness after the return of the subpoena in January showing that he could not be found in Delta ounty, and before the first trial of the cause in June. It is true the application states that after the trial in January it was informed that said witness resided in Hopkins County, and that it caused "diligent search" to be made for him in said county, but that he could not be found. This statement is not definite enough to show the diligence used, and does not meet the requirement of the statute. It

fails to show when the information was received, or what efforts were used to gain correct information as to his locality, and it also fails to show when and how the search for him was made. For aught the application shows, the search may have been made in Hopkins County soon after the January term of court, and several months thereafter intervened before the June term, in which no effort was made to ascertain Hope's whereabouts. The resistance to the motion for continuance shows facts as to the whereabouts of said Hope which warrants the conclusions that if proper diligence had been used by appellant it could have ascertained his residence and secured his testimony in time for the June term. Railway v. Hardin, 62 Texas, 367; Railway v. Aikin, 71 Texas, 373. The diligence shown to have been used after the first and before the second trial in June is not sufficient, especially as prior to that time proper diligence was not shown to have been used to procure Hope's testimony.

Another ground for continuance was urged, and that is, that the jury for the term had been discharged; that the cause had been once tried at that term, resulting in a mistrial, and that defendant was entitled to a trial before a jury drawn by a regular commission appointed for that purpose. The trial court appended to the bill of exceptions taken to the overruling of the application the following explanation, to wit: "On the 19th of June the jury trying this cause the first time during this term were discharged. After they were discharged plaintiff's counsel requested that the case be set down for trial at another day during the term. Counsel for defendant were not present, but the court, in a conversation with the claim agent of defendant who had been present aiding counsel for defendant in looking after their side of the case, stated to the court that he saw no reason why the case should not be again tried at this term. The court then informed plaintiffs that he would set the case down for some day and fix the day later. After this time, but during the third week of court, the case was set for the 9th day of July, over the objection of defendant's counsel. The jury commissioners had at the last (January) term of court selected no jury for any but the first three weeks of court. This term is allowed by law to continue until the business is disposed of, and next term is limited to three weeks. Therefore the court was of the opinion he should dispose of the business this term, and in order to do so it was necessary to try cases both during the fourth and fifth weeks (the fifth being the week this cause was last tried), and there being no jury for such weeks it was necessary to have them summoned during the term."

It was in the discretion of the trial court to reset the case, and as a jury had been demanded and none had been provided for that week, it was in the power of the court to order the sheriff to summon a sufficient number of qualified persons from which a jury could be selected. Telegraph Co. v. Everhart, 32 S. W. Rep., 91; Smith v. Bates, 28 S. W. Rep., 64; Railway v. Vinson, 38 S. W. Rep., 540. The application for continuance was properly overruled.

The appellant assigns as error the action of the court in overruling the challenge to the array of jurors, the grounds for challenge being, in substance, that the jurors were not selected by a jury commission, but were selected and summoned by the sheriff and his deputies. Also that said jurors were summoned by persons pretending to act as sheriff and deputy sheriffs, to whom the required oath had not been administered in the manner required or authorized by law. The motion also set out certain reasons for the challenge, to the effect that this cause was tried at the January term of court and resulted in a mistrial; that it had been tried at a former day of the June term resulting in a mistrial; that the regular jury had been discharged; that the cause had attracted a great deal of attention throughout the county, and many influential citizens had expressed and manifested a deep interest in behalf of the plaintiffs; that the plaintiffs are related to a very large number of the most influential people residing in the county who are interested in the success of plaintiffs; that said relatives live and are known in different portions of the county, so that their influence permeates a large body of the people, and affects a jury summoned specially and solely to try this cause, and thereby prevent the defendant from getting a fair and impartial jury. The trial court heard evidence as to the existence of the alleged reasons for quashing the panel, and which evidence, we think, was sufficient to warrant the court in overruling the challenge.

The appellant's motion for change of venue was overruled, and this is assigned as error. The change of venue was sought on the grounds, first, a combination of influential persons against appellant, and second, the preponderating influence of the relatives and friends of appellee in the county; and that the case had been twice tried before and become so notorious it was impossible to get a fair and impartial jury to try the same. The credibility of the persons making the application, their means of knowledge and the truth of the facts set forth in the application, were duly attacked, and the issue so formed was tried and the motion was overruled.

Article 1272, Revised Statutes, requires the trial court, on the issue thus formed, to grant or refuse the application "as the law and facts shall warrant." Unless the action of the trial court was shown to be clearly wrong, this court will not revise it. Under the facts the court was warranted in refusing the application. Railway v. Nicholson, 57 S. W. Rep., 693.

The court overruled appellant's challenges for cause to ten jurors who each, on examination, testified that they "had heard of the two trials of the case and the results thereof;" and after exhausting all but one of its challenges, appellant had to accept five jurors who made like answers. The fact that these jurors had heard of the two former trials and result thereof did not of itself render them disqualified to try the case. Whether or not they were influenced by such information is not shown by the record, and the court could not so presume. Appellant was not prevented from pursuing the inquiry. In fact the trial court

invited further inquiry by stating to counsel for appellant that each juror might be asked if he had heard how the former jurors stood, and that if any one should answer that he had so heard, the challenge would be sustained.

Over appellant's objection Mrs. Crowder, wife of deceased, was permitted to testify that her daughter Mary, one of the plaintiffs, was afflicted; that her right thigh and leg were paralyzed, and had been from the time she was two years old, from the thigh joint to the end of the foot, and that her father kept a buggy and horse mostly on account of sending her to school. The grounds of objection were that the same was immaterial and irrelevant and calculated to prejudice the rights of defendant. Article 3027, Revised Statutes, provides: "The jury may give such damages as they may think proportionate to the injury resulting from such death; and the amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict." Had Crowder lived, the daughter Mary would doubtless, by reason of her affliction, been a greater recipient of pecuniary aid from him than others of his family who were more able to provide for themselves, and the evident object of the statute in authorizing the jury to apportion the amount was that each might receive a share in proportion to the amount of pecuniary aid they would probably have received from the deceased, had he lived; otherwise all beneficiaries would stand on an equal footing and each be entitled to an equal share, regardless of their respective conditions. This being the object of the statute, unless such testimony was admissible the jury would have no basis upon which to predicate a just and equitable division, but would be left without any guide in allotting to each a proportion of the amount of damages assessed. We are of the opinion that the evidence was admissible for the purpose indicated. If the appellant was fearful it would operate prejudicial in other ways, it should have requested the court to have limited the consideration of it by the jury in making the apportionment.

It is urged by various assignments of error that the evidence is not sufficient to support the verdict, the main contention being that deceased was guilty of contributory negligence. The evidence is abundant to show negligence upon the part of the operatives in failing to keep a proper lookout, and in not giving the proper signals under the circumstance. This being true, the question to be determined is, does the evidence conclusively show contributory negligence on the part of the deceased? The natural presumption is that every one will act with due care, and negligence will not be imputed to one if he fails to anticipate culpable negligence on the part of another, as one has the right to assume that the law will be observed by every one. Shearm. & Redf. on Neg., sec. 92.

While the evidence fails to definitely show that Crowder looked and listened before stepping on the track, it is not doing violence to the evidence to assume that he saw the engine and cars at the south end of

the switch, and concluded that they would not be then backed down at that time, or if so, that a proper lookout would be kept, and that proper signals would be given to warn him in time to leave the track to prevent injury. This he had a right to expect, as he was on the track at a place habitually used by pedestrians, and a place where a duty rested on the operatives to use proper care to prevent injury to those who might be on the track.

One witness testified that when Crowder stepped on the track the train was standing on the main track at the south end of the switch. No other witness testifies definitely as to the exact point where the train was when Crowder got on the track. Not only did the operatives fail to keep a lookout and give proper signals, but the train, it seems from the testimony, made little noise as it backed down, one witness stating that it "slipped back on the track." Another who was about the same distance from the train as Crowder said he did not hear the noise from the train. While the evidence is not conclusive as to the absence of contributory negligence, yet it is not so lacking in probative force as to authorize us in holding that it was not sufficient to support the verdict of the jury.

It is urged that the verdict is excessive. In assessing damages in this character of case the amount is left to the discretion of the jury, and, unless such discretion is abused, this court is not warranted in disturbing the verdict. While under the evidence the verdict is large, we do not feel authorized in saying that there was such an abuse of the discretion of the jury as to require a reversal by appellee.

There are various other assignments of error complaining of the court in admitting evidence, in refusing charges requested, etc., which we deem unnecessary to discuss, but will simply say that there is no error requiring a reversal of the judgment. It is therefore affirmed.

*Affirmed.*

Writ of error refused.