Fort Worth & Denver City Railway Company v. J. P. Wyatt.

Decided March 5, 1904.

**Contributory Negligence—Crossing Railroad Track—Failure to Look.**

Where the uncontradicted evidence showed that plaintiff, who was blind in his right eye, did not stop and look before crossing a railroad track, and was struck by a moving car then being switched and approaching from the right-hand side, there was such proof of contributory negligence as required a reversal of the judgment in plaintiff's favor. Gulf C. & S. F. Ry. Co. v. Holland, 27 Texas Civ. App., 397, and Texas Midland Ry. Co. v. Crowder, 25 Texas Civ. App., 536, distinguished.

Appeal from the County Court of Clay. Tried below before Hon. James F. Carter. -

*Stanley, Spoonts & Thompson* and *Marshall Spoonts,* for appellant.

*W. T. Allen,* for appellee.

SPEER, ASSOCIATE JUSTICE.—This is a suit for personal injuries, instituted in the County Court of Clay County by J. P. Wyatt, against the Fort Worth & Denver City Railway Company, which resulted in a judgment in favor of said Wyatt in the sum of $330. The contested issue seems to be that of the contributory negligence of the appellee. As bearing upon this issue we quote his testimony: "I started to go to Windthorst, and as I was going out of town I came to where the street I was traveling turns across the defendant's railroad tracks. I do not know how many tracks there are here at this crossing, but it seems there were several. The first track I came to had several box cars standing on it southeast of and up to the crossing. This track ran southeast from the crossing, and joined on to another track which ran north and south. When I got to this first track I looked down the track and saw an engine standing on the track running north and south; the engine was headed south. I drove on across this track and to another track a short distance, I don't know just how far, but it seemed only a few steps; and just as I drove up on this second track my horse shied off to the left and I struck him with the lines and turned my head around to the right and saw a detached car right up in four or five feet of me, coming toward me. The car struck my buggy in a moment after I saw it and crushed the wheels, and it dropped down on the track, and was pushed along on the ground several feet until this moving car struck and coupled with another car standing still on the track. * * * At the time of the injury, and while I was approaching the crossing, there was no whistle blown or bell rung, and no signal or warning of any kind given that a car was approaching the crossing. I am blind in my right eye, and the car came up on the right side, and I did not hear it or see it until my horse shied off, and I turned my head around and saw the car with my left eye. I did not see any engine

moving as I approached the crossing, nor did I hear any engine. All the engine I saw was the one standing still down on the main track just before I started across. I don't know whether this is a street or not that crosses these tracks at this crossing. It is where one of the most public streets in Wichita Falls turns and crosses the tracks and seemed to be traveled a great deal. * * * My horse shied off to the left, which was in the opposite direction from which the car came. I am blind in my right eye, the one that was in the direction from which the car came. I can see all right with my left eye; my hearing is also good. I did not turn my head around and look up the track in the direction from which the car came after I crossed the first track and before the second track was reached; if I had I could have seen the car before I drove on the track. I did not hear the car make any noise, and if it had been making much noise I think I would have heard it. There was nothing to have prevented me from seeing the car before I drove on the track if I had turned my head and looked. If I had seen or heard the car before going on the track I would not have gone upon it till the car had passed. There was nothing to obstruct my view of this track after I crossed the first track; that is, there was nothing to obstruct my view of the car on the second track before I drove on the track. That track itself being at a public crossing is about level with the ground."

A witness for the defendant testified that the distance from the crossing of the public road on the elevator track and the crossing on the mill track, where appellee received his injuries, is about 100 feet or a little more; that he stepped it and it was thirty-four steps. Several other witnesses testified, as did appellee, that there was nothing to obstruct the view of appellee of the approaching car after he had crossed the first track, if he had turned his head and looked. The evidence seems to be uncontradicted upon this point as well as upon the other point, that appellee did not look before going upon the second track, where he was injured. In view of this testimony we can not avoid the conclusion that appellant's assignments raising the question of the insufficiency of the evidence upon the issue of contributory negligence to support the judgment should be sustained, and the judgment reversed. While we are not inclined to hold as matter of law that the facts here detailed constituted contributory negligence, yet we do think the evidence is wholly insufficient to show that appellee was free from such negligence. There are many authorities holding as matter of fact that one who goes upon a railroad track without taking the precaution to look and listen for approaching cars, and is injured by a car which he might have discovered by the exercise of such diligence, is guilty of such negligence as will preclude a recovery by him. Galveston H. & S. A. Ry. Co. v. Bracken, 59 Texas, 73; Galveston H. & S. A. Ry. Co. v. Ryon, 70 Texas, 56, and 80 Texas, 59; Sabine & E. T. Ry. Co. v. Deane, 76 Texas, 73; Turner v. Ft. Worth & D. C. Ry. Co., 30 S. W.

Rep., 253; Gulf C. & S. F. Ry. Co. v. Miller, 70 Texas, 25; Lumsden v. Chicago R. I. & T. Ry. Co., 31 Texas Civ. App., 604, 3 Texas Ct. Rep., 169.

Much reliance is placed by appellee upon the cases of Gulf C. & S. F. Ry. Co. v. Holland, 27 Texas Civ. App., 397, 66 S. W. Rep., 68; Missouri K. & T. Ry. Co. v. Owens, 32 Texas Civ. App., —, 8 Texas Ct. Rep., 71, and Texas Midland Ry. Co. v. Crowder, 25 Texas Civ. App., 536, 64 S. W. Rep., 90, but we think these cases are clearly distinguishable from this one.

In the Holland case it appears that "when appellee (the plaintiff) started across the tracks at the point of the accident, he stopped and looked for the train, for he knew it had been switching in the yards. He then discovered that it was standing still beyond the point where the Houston & Texas Central tracks cross the appellant's tracks, and about 250 feet from the point at which the accident occurred. With reference to this appellee testified that when he looked, and saw them standing still, he thought everything was safe, and proceeded to cross at his usual gait. He did not look again, and did not hear the approaching cars." The court in disposing of the case say: "In this State the mere failure to look and listen does not, as matter of law, constitute negligence. It may be true, as found by the jury, that a person of ordinary prudence, when he looked and saw a train standing still some distance away, would have concluded that he could safely cross without exercising further vigilance. If appellee's account is true, the excessive speed of the train is responsible for the accident, for, but for this, his precaution in looking before starting to cross would have been ample protection against accident." Thus it will appear that in that case the injured party exercised the precaution of looking before entering upon the place of danger.

In the Owens case Owens, the injured party, when within 133 feet of the crossing where the accident occurred, looked for a train and saw none, although he could see as far back as 807 feet. He knew the rate of speed at which trains were permitted to run by the terms of the ordinances of the city and the rules of the company, and the rate they usually ran, and the court said that "he may have believed, and under the evidence the jury could have found, that it was not negligence on his part to fail to look again before attempting to cross the track. He was walking at the rate of three miles per hour, and had only walked 133 feet since he last looked for a train. Had not the train which injured him been running at an unusual and an unlawful rate of speed, and had not those operating the same violated the ordinances of the city and the rules of the company, in failing to ring the engine bell and keep a lookout, the accident would not have occurred." Thus, in that case it appears that the injured party did look down the track he was about to cross for a very considerable distance before placing himself in a position of danger. Besides, too,

in that case the question before the court was the correctness of the trial court's ruling in refusing to give a summary instruction to the jury to find for the defendant railroad upon this issue.

In the Crowder case a single quotation will suffice to show the distinction between that and the present case. It is there said: "While the evidence fails to definitely show that Crowder looked and listened before stepping on the track, it is not doing violence to the evidence to assume that he saw the engine and cars at the south end of the switch, and concluded that they would not be then backed down at that time, or, if so, that a proper lookout would be kept, and that proper signals would be given to warn him in time to leave the track to prevent injury." Crowder was killed by the accident, and hence the presumption indicated in the quotation.

Now in the present case it is not shown that appellee could see any portion of the mill track where the accident occurred, from the point at the elevator track where he first looked. Nor is it shown how far down the track he could see at the time he actually looked. No presumptions that he did look before going upon the mill track can be indulged, as in the Crowder case, for, as before indicated, the evidence is uncontradicted that he did not look. Moreover, he was blind in his right eye, the side from which the car injuring him approached, and this fact itself emphasizes the necessity for his exercising a somewhat higher degree of care than that to be exercised by a person not similarly afflicted. Galveston H. & S. A. Ry. Co. v. Ryon, supra.

It may be that appellee, upon another trial, can sufficiently explain his failure to look, but in the present state of the evidence we conclude that, as matter of fact at least, the evidence shows he was guilty of such contributory negligence as to require a reversal of the judgment.

*Reversed and remanded.*