St. Louis Southwestern Railway Company v. Joe Harkey.

Decided May 24, 1905.

**1.—Continuance—Verification.**
    An application for continuance verified by the attorney of defendant as true "to the best of his knowledge, information and belief" is insufficient.

**2.—Continuance—Diligence.**
    Due diligence to procure the testimony of a witness residing outside the county is not shown where the applicant, relying on his promise to attend personally, failed to take his deposition.

**3.—Damages—Personal Injury.**
    Evidence considered and held to support a recovery of $2,000 as damages to a passenger injured in derailment of train.

**4.—Deposition—Motion to Quash.**
    A motion to quash a deposition comes too late when made after the parties have announced ready for trial.

**5.—Same—Question of Fact.**
    When the motion to quash a deposition presents a question of fact as to the office and postmaster to whom it was delivered, the court may receive testimony outside the deposition itself. .

**6.—Passenger—Carrier—Negligence.**
    Evidence considered and held to support a finding of negligence, as causing the derailment of a train, in the matter of rotten ties and insufficient diligence to maintain track.

**7.—Same—Presumption.**
    The derailment of a train, where the train and track are not interfered with by extraneous force, creates a presumption of negligence against the carrier, which it is called on to rebut by proof of the exercise of the utmost care and foresight compatible with the prosecution of its business.

Appeal from the District Court of Cass County. Tried below before Hon. P. A. Turner.

The diligence used to procure the testimony of Dr. Walls, the absent witness, was, that an agent of the defendant had called upon him some time before the term of the court, and procured from him a distinct promise to attend the trial. Transportation was procured and furnished him from Naples to Linden and return and was accepted by the witness. He resided out of the county where the case was tried, and the defendant desired, if possible, his personal attendance, but would have taken his deposition, except for the absolute promise of the witness to come

in person. The defendant took a great number of depositions in the case, but refrained from taking the deposition of Dr. Walls, because it desired and expected him to attend and relied entirely on his promise to do so.

*Glass, Estes & King,* for appellant.—The testimony of Dr. Walls was of material importance to the defense. It could not be procured from any other source, and the appellant had used due and reasonable diligence to procure his attendance. The trial of the case without his testimony was an injustice to the appellant, and it was error, and was reversible error for court to overrule the motion. Low Co. v. Hickson, 74 S. W. Rep., 782; Houy v. Gamel, 62 S. W. Rep., 76; Stanley v. Epperson, 45 Texas, 651; Chilson v. Reeves, 29 Texas, 276; Dillingham v. Ellis, 86 Texas, 447.

The preponderance of the testimony, and the attending facts and circumstances, show that if plaintiff was injured in the wreck of the train, his injuries were temporary and slight. The judgment of the court, awarding him $2,000 for same, is excessive, and more than would fairly and reasonably compensate him for such damage as he has sustained. Houston & G. N. Ry. v. Randall, 50 Texas, 261; Gulf, C. & S. F. Ry. v. Gatewood, 79 Texas, 89; International & G. N. Ry. v. Hall, 78 Texas, 660.

The envelope in which the deposition of J. M. Brown was returned shows neither the postmark of the place from which it was sent, nor was it signed by the postmaster. It was error for the court to overrule the motion to quash the deposition, and admit any part of same to be read in evidence. Batts Civil Stats., art. 2286; Laird v. Ivens, 45 Texas, 621; Anderson v. Rogge, 28 S. W. Rep., 106.

The overwhelming preponderance of the testimony shows that the derailment of the engine and car in which plaintiff was riding was not due to any fault or want of care on the part of the servants of appellant; that appellant, through its agents, had observed the high degree of care required by law for the safety of its passengers, and the accident was an inexplicable and unavoidable disaster, the risk of which constitutes a part and feature of modern travel. Fordyce v. Withers, 20 S. W. Rep., 768; San Antonio & A. P. Ry. Co. v. Robison, 73 Texas, 285; Texas Central Ry. v. Burnett, 80 Texas, 539.

*O'Neal & Allday,* for appellee.—A verification of an application for a continuance which avers that the facts set forth in the motion are to the best of his knowledge, information and belief true, is insufficient within the Revised Statutes, 1895, article 1276, providing that no continuance shall be granted except for cause supported by affidavit. Graham v. McCarty & Brown, 69 Texas, 323; Spinks v. Mathews, 80 Texas, 373; Wilson v. Adams, 15 Texas, 324; Pullen v. Baker, 41 Texas, 419; Missouri, K. & T. Ry. Co. v. Pietzsch, 10 Texas Civ. App., 575; Gulf, C. & S. F. Ry. Co. v. Brown, 75 S. W. Rep., 807.

An application for continuance which fails to show that any attempt was made to take the deposition of the absent witness, who lives out of the county, is not a statutory application, and the discretion of the trial court in refusing an equitable application for a continuance is

subject to revision only in case of abuse of such discretion. Gulf, C. &
S. F. Ry. Co. v. Wheat, 68 Texas, 133; Texas & Pac. Ry. Co. v. Hardin,
62 Texas, 367; St. Louis S. W. Ry. Co. v. Massay, 8 Texas Ct. Rep.,
405; Gulf, C. & S. F. Ry. Co. v. Rowland, 35 S. W. Rep., 31; Belnap
v. Groover, 56 S. W. Rep., 249; 4 Ency. of Pl. and Pr., 862.

A motion to suppress a deposition must be made before the announce-
ment of ready for trial, by the parties. 1 Sayles' Texas Civ. Stats., art.
2289, and the authorities cited in foot notes.

The envelope sent up shows that it was mailed at Bryans Mill, and
if it had not shown this, the court had the legal right to ascertain from
evidence who the postmaster was at Bryans Mill, where the depositions
had been mailed, and he found as a matter of fact that E. P. Bryan
is the postmaster at Bryans Mill, postoffice, Cass County, Texas. Garner
v. Cutler, 28 Texas, 176.

When the derailment of a train results in the injury to a passenger,
the nature of the occurrence is prima facie evidence of the negligence of
the carrier or its servants, and the burden is upon the carrier to show
that the accident was not caused by defective cars, or roadbed, or by the
negligence of the employes. Mexican Cent. Ry. Co. v. Lauricella, 87
Texas, 277; Texas & St. L. Ry. Co. v. Suggs 62 Texas, 323; Galveston,
H. & S. A. Ry. Co. v. Fales, 8 Texas Ct. Rep., 629.

EIDSON, Associate Justice.—This suit was brought in the court
below by appellee for $2,000 damages for personal injuries, alleged to
have been received by appellee while a passenger on one of appellant's
trains, during the month of October, A. D. 1902. The allegations of
the petition are substantially as follows: That the car on which ap-
pellee was riding was derailed near Winfield, Texas, through the negli-
gence of appellant and its agents; that at the time of such derailment
appellee was thrown from his seat with great violence into the aisle
of the coach in which he was riding, and thereby greatly injured. He
alleged that his right leg, his back and his right side were greatly
bruised, lacerated and mashed, and that he was also injured internally;
that by reason of said injuries he was confined to his bed the greater
part of two months, during all of which time he suffered great physical
pain and mental anguish; that his said injuries are permanent, and that
he still suffers intense pain from said injuries; that since said injuries
he can not sleep on his right side, and can scarcely lift anything of
much weight; that before said injuries he was a stout able-bodied man;
that he is a farmer and stockman, and was earning from $100 to $150
per month, and that since his injuries he can not earn more than one-
third of said amount; that by reason of said injuries he was compelled
to pay out $50 for medicine and medical treatment.

Appellant answered by general and special exceptions and general
denial. The case was tried before the court without a jury, and judg-
ment rendered in favor of appellee for the sum of $2,000.

Appellant's first assignment of error complains of the action of the
court below in overruling its application for a continuance of the case.
Appellant's application in our opinion, was not verified, as required by
law. The oath to the application was made by appellant's attorney, and
stated as follows: That he is the attorney for the above defendant, and

that the facts set forth in the above motion are, to the best of his *knowledge, information and belief,* true. Such an affidavit was held by this court in Gulf, C. & S. F. Ry. Co. v. Brown, 75 S. W. Rep., 807, to be insufficient, and such holding is fully supported by the following authorities: Graham v. McCarty & Brown, 69 Texas, 323; Spinks v. Matthews, 80 Texas, 373; Pullen v. Baker, 41 Texas, 419; Wilson v. Adams, 15 Texas, 324; Missouri, K. & T. Ry. Co. v. Pietzsch, 10 Texas Civ. App., 575. We are also of the opinion that the application does not show due diligence in endeavoring to procure the testimony of the absent witness.

By its fourth assignment of error appellant contends that the amount of the judgment in favor of appellee is excessive. In view of the character and nature of appellee's injuries, we do not agree with appellant in this contention. The testimony shows appellee to be only 32 years old, and that prior to receiving the injuries he was a stout able-bodied man, capable of doing considerable manual labor, and that he earned from $1,000 to $1,500 a year, and that since he received the injuries, he has not been able to earn half so much. Appellee testified that in the accident, he received a violent fall, that it jerked his side terribly, and mashed it in and bruised his back and right leg; that he was confined to his room and unable to do any work for five or six weeks, that he suffered a great deal from his wounds, that they prevented him from sleeping at night; that frequently he had to sit up all night on account of his head, back and side hurting him so badly.

Dr. Davis, who examined him two days before the trial, testified that in measuring appellee's sides and hips, he found his right side sunken and shorter than the other, the muscles atrophied, and that when standing erect, his right shoulder was lower than the left; that the two lower ribs on that side were driven in and down, and there was a tender spot over his spine, and also over these two ribs; that from appellee's statement as to the pain he suffered, there must be an adhesion on the inside or something torn loose, and that while nothing can be done now to relieve him, nature having performed the best cure possible, yet complications might arise hereafter that would necessitate an operation. He also testified that appellee's injuries were permanent. This witness also testified that he had known appellee all his life, and that prior to the date that he alleged he received his injuries, he was a stout, able-bodied man, but that since that date he had not been. Appellee's testimony with respect to his injuries and suffering was, in many respects, corroborated by that of his wife and other witnesses. In view of the character and nature of appellee's injuries, as shown by the testimony, we do not think the amount of the judgment is excessive.

Appellant's second assignment of error complains of the action of the court in overruling its motion to quash the deposition of J. M. Brown, a witness for appellee; appellant's contention under this assignment being that said deposition was not returned as required by law, in that the envelop in which the deposition of said witness was returned shows neither the postmark, place from which it was sent, nor was it sent by the postmaster. The envelop in which the deposition was returned to the court below is sent up in the record of the cause. There is an endorsement on the envelop showing that it was received from E.

W. King, April 16, 1904, which is signed by E. C. Bryan, P. M.   There is a stamp on the envelop, evidently made by the postmaster receiving the same, containing the following words, abbreviations ·and figures: "Bryans  *  *  *   Apr. 16, 1904.   Texas," which are very distinct. Just after the word "Bryans" are some indistinct impressions of letters. The letters M and two ll's can be observed reasonably well, but at this time no letter can be distinguished between the M and the double l. The court in approving appellant's bill of exceptions taken to the action of the court in overruling its motion to quash the deposition, states by way of explanation of its action that appellant did not make his motion to quash the deposition until after the parties had announced ready for trial; and that appellee objected to the motion being then considered, upon the ground that it was made too late; and the court further states that the deposition showed that it was taken by E. W. King, a notary public of Cass County.   And the court also states in his explanation to said bill of exception that E. C. Bryan was the postmaster at Bryan's Mill postoffice, in Cass County, Texas, but does not state how that information was acquired, whether from the endorsements on the envelop or from extraneous proof.

We are of the opinion that the action of the court should be sustained upon the ground that the motion came too late after the announcement of ready for trial.   (Sayles'· Rev. Stats., art. 2289; Hill v. Smith, 25 S. W. Rep., 1079; Houston & T. C. Ry. Co. v. Burke, 55 Texas, 323; Coleman v. Colgate, 69 Texas, 88; Neyland v. Bendy, 69 Texas, 711; Missouri Pac. Ry. Co. v. Ivy, 71 Texas, 409.)   We are also of the opinion that the motion raised a question of fact for determination by the court upon which it was authorized to receive testimony outside of what was shown by the deposition itself, or the endorsement on the envelop.   (Garner v. Cutler, 28 Texas, 176.)

By its third assignment of error, appellant insists that the testimony is insufficient to support the judgment of the court in that the derailment of the engine attached to the car on which appellee was riding at the time he received· his injuries, and the derailment of a portion of said car, was not caused by any failure or neglect on the part of appellant or its employes; but that appellant had observed, used and exercised the high degree of care required by law for the safety of appellee, and that if he was injured at all, such injury was the result of an inevitable and inexplicable accident which is one of the risks assumed by passengers,· and which can not be foreseen or avoided by carriers. We can not agree to this contention of appellant.   It appears from the testimony that appellee's injuries resulted from the derailment of appellant's train; that the tender in front of the engine was turned over on one side of the track, and the engine turned over on the other side, and the front wheels of the coach in which appellee was riding were derailed.   Appellee testified that the end of the coach in which he was riding was knocked in, and that he was thrown into the aisle and injured; that when he got up the passengers were "hollering" fire, and the coach was on fire.   Appellant's master mechanic testified that he examined the engine and tender after they had been shipped to Tyler after the wreck; that to all appearances the trucks were in first-class condition; that the only thing he found broken about them was **two**

brake-beams and one brake-rod; that it had beeen known that a brake-beam would drop down and derail a car; that to the best of his recollection these brake-beams were broken in two right in the middle, but they were still hanging· intact with the hangers there for that purpose; that he did not *think* they could have caused the derailment of the engine.

Appellant's roadmaster testified that· according to his recollection the ties where the wreck occurred were in very fair condition; that he did not remember if any of them were broken in· as many as three pieces. There may possibly have been a few right where the engine turned over. Appellant's foreman of the track repairing crew at the time of the wreck testified that there were a few of what some people would probably call rotten ties in the track but not enough to cause any trouble. That there were no broken beams before the engine turned over, for he saw it before it was wrecked.· He saw it up near Sulphur Springs, but did not examine it there to see about the beams; that they were short on section men at the time of the wreck, and that some of the foremen along about that time went out with one or two men to work the road; that some of them did not have over one or two men, and that it was impossible to keep a road up as old as that, with the sections as long as his was, where they furnished the foreman with only one or two men. The road can not be kept up in first-class repair under these conditions; at that time he was allowed five men according to his recollection; that he had three at work that day, and he thought he went out a few days with two men, and maybe he was out one day with one; that a part of the time he had only one or two men, and with that sort of crew he would not say that he could do his full duty. Some of the ties that were broken under the engine were rotten ties. There were some rotten ties there, but he did not remember how many.

Appellee testified that he noticed the condition of the track where the wreck occurred. After the wreck was over and they found the engineer and fireman and were taking them out, he went up the track probably fifty yards and sat down, and the conductor came up and took his name, and said he didn't see anything in the world to cause the wreck, and appellee said: "You don't, well here's what caused it," and he pulled the spikes out of the ties right there and let them drop back in the ties, and that where they were sitting, appellee showed the conductor a tie rotted square in two; that he noticed the ties where the wreck occurred, they were broken into as many as three pieces, and a sound tie when the trucks runs over it just goes up and down on them if they are sound; that he never saw a right sound tie break. The ties were broken in pieces, they were unsound, rotten ties.

Appellee having shown that his injuries were received in an accident resulting from the derailment of appellant's train, it devolved upon appellant to adduce evidence to show that the accident could not have been avoided by the exercise of the utmost care and foresight on its part. In the case of Mexican Central Ry. Co. v. Lauricella, 87 Texas, 279, Chief Justice Gaines delivering the opinion of the Supreme Court uses this language: "It is a reasonable and sound doctrine that when a passenger is injured by an accident, such as the derailment of a train at a place where the track and train are entirely under the control of the company, that is to say, where they are not interfered with by· any

extraneous force, a presumption of negligence arises, and that in order for the company to exonerate itself from liability for the injury, it must adduce evidence to show that the accident could not have been avoided by the exercise of the utmost care and foresight reasonably compatible with the prosecution of its business." (See also Galveston, H. & S. A. Ry. Co. v. Fales, 8 Texas Ct. Rep., 629, 77 S. W. Rep., 439; Texas & St. L. Ry. Co. v. Suggs, 62 Texas, 323; Gulf, C. & S. F. Ry. Co. v. Wilson, 79 Texas, 371; International & G. N. Ry. Co. v. Thompson, 8 Texas Ct. Rep., 760.)

We are of opinion that the testimony as shown by the record is amply sufficient to support the judgment of the court below, and it is therefore affirmed.

*Affirmed.*

Writ of error refused.