KANSAS CITY, M. & O. RY. CO. OF TEXAS
v. STARR et ux. (No. 1141.)

(Court of Civil Appeals of Texas. Amarillo.
March 28, 1917. Rehearing Denied
May 2, 1917.)

1. RAILROADS ☞357 — DUTY TO DISCOVER PERSON ON TRACK.

It is the duty of a railroad company's servants, operating its trains, to use ordinary or reasonable care to discover persons on tracks, and failure to do so is negligence on the part of the company, for an injury resulting from which it is liable, unless such liability is defeated by contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1235.]

2. RAILROADS ☞382(1)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE OF CHILD.

That which would be contributory negligence in an adult while crossing railroad track would not necessarily be such in case of a child.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1297.]

3. RAILROADS ☞396(1)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

Where a child was struck, in a manner not accounted for, by a train while crossing the track, the burden of proving contributory negligence was on the company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1341–1343.]

4. RAILROADS ☞396(1)—ACCIDENT AT CROSSING—NEGLIGENCE—BURDEN OF PROOF.

Where a child was struck, in a manner not accounted for, by a train while crossing track, the burden of proving negligence of the company was on plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1341–1343.]

5. RAILROADS ☞398(1)—ACCIDENT AT CROSSING—SUFFICIENCY OF EVIDENCE.

In action for death of child, struck in a manner not accounted for, by train while crossing track, evidence *held* sufficient to show company's negligence in not keeping proper lookout,

and in suddenly moving cars without warning, proximately causing death.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1363.]

6. DEATH ☞67 — DAMAGES — ADMISSION OF EVIDENCE—VALUE OF CHILD'S SERVICES.

In action for death of a 11-year old boy, his father's testimony, showing the boy's capability for work and his earning capacity, where the father testified that the boy helped him around the farm and cotton gin, and where the father employed other help, and it was fairly obvious that he knew the wages usually paid for labor, was admissible, and was not objectionable on the ground that such damages were too remote, the testimony affording some basis on which the jury could estimate the value of such services.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 88.]

7. EVIDENCE ☞546—OPINION — QUALIFICATION OF WITNESS—COURT'S DISCRETION.

The determination of preliminary questions of a witness' qualification to express opinion is largely within the trial court's discretion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2363.]

8. DEATH ☞104(5) — DAMAGES — INSTRUCTIONS.

In action for death of child, instructions stating that measure of parents' recovery was the pecuniary benefits they would "in reasonable probability have received" during child's minority *held* proper, and the probability of the boy's death during that time was embraced within the instruction.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 146.]

9. RAILROADS ☞332—CROSSING BY CUSTOM—RIGHT TO GO AROUND OBSTRUCTED CROSSING.

One crossing a railroad track at a place which has become a public crossing by custom has the right to pass around a car obstructing such crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1079.]

10. TRIAL ☞203(2)—REFUSAL OF REQUESTED IMMATERIAL ISSUE.

It was not erroneous to refuse to submit an issue which, under the facts, did not assist in determination of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 478, 479.]

11. TRIAL ☞251(8) — REFUSAL OF INSTRUCTIONS—ISSUE NOT PLEADED.

Where defendant railroad company, in action for death at crossing, did not plead contributory negligence in choice of crossings, it was proper to refuse to submit that issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 593.]

12. APPEAL AND ERROR ☞1004(1)—REVIEW—EXCESSIVE VERDICT.

Where no accurate rule of damages exists, and no improper motive in estimating amount is shown, and the amount awarded does not indicate such fact, a verdict will not be disturbed for being excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3944.]

13. CONTINUANCE ☞22—ABSENT WITNESSES—COURT'S DISCRETION.

Where application for continuance on ground of absent witnesses is made on information and belief, and is indefinite, the granting thereof is within the court's discretion.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 58–67.]

**14. CONTINUANCE ☞22—ABSENT WITNESSES —SUFFICIENCY OF APPLICATION.**

Where application for continuance on the ground of absent witnesses was made on information and belief, and was indefinite, and no attempt to take depositions was shown, the refusal thereof *held* not an abuse of discretion.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 58–67.]

Appeal from District Court, Wilbarger County; J. A. Nabers, Judge.

Action by J. B. Starr and wife against the Kansas City, Mexico & Orient Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed.

H. G. McConnell, of Haskell, L. W. Allred, of Chillicothe, and H. S. Garrett, of San Angelo, for appellant. Berry, Stokes & Morgan, of Vernon, for appellees.

BOYCE, J. This appeal is from a judgment in favor of J. B. Starr and wife, Edna Starr, awarding them damages on account of the death of their minor son, J. B. Starr, Jr., a child a little under 11 years old at the time of his death, which occurred on November 26, 1915. It was alleged by plaintiffs that a footpath, commonly used by the public, with defendant's knowledge and consent, crossed the tracks of the defendant in the town of Odell, and that, as their boy was crossing the tracks along this footpath some cars were suddenly, and without warning, bumped over the crossing, running over the little boy, and injuring him so that he died on the next day; that the defendant was negligent in the movement of said cars, in that the same were moved by a pile-driving machine, incapable of switching or moving cars except by a sudden and violent movement; that no warning was given by the blowing of whistle or ringing of bell, and no lookout stationed at the end of the car to be moved, to warn those who might be on the track at the crossing. The defendant denied that it was negligent, and pleaded that the boy was himself negligent in going upon the track in front of the car, and that the plaintiffs were guilty of contributory negligence in permitting the child to go upon the tracks of the defendant.

The tracks of the defendant company ran through the town of Odell in a northerly and southerly direction. At the place of the accident there were three tracks; the west track being called the passing track. The middle track was the main track, and the east track was known as the house track. About 200 yards south of the depot a path ran across these tracks. This path had been used by the employés of the railroad company and the public generally for a long time, with knowledge on the part of the defendant and without protest, having been originally used in going to the depot, as first established. For some time before the accident defendant had a bridge crew working out of Odell, boarding in box cars which stood on the passing track at Odell. In their work they used a pile-driving machine, which consisted of a stationary engine, furnishing the power to operate the pile driver, placed on a car and connected with the wheels, so that it could propel itself and handle a car of material. The crew also used a motor car, and went to and from their work from Odell on the pile driver and motor car. The pile driver usually stood at night on the passing track. It was equipped with a whistle, but had no bell, and did not have the power or equipment to do regular switching. On the day of the accident the pile driver took out a flat car loaded with ties, and the foreman desired to place the empty flat car, when he returned to Odell that evening, on the house track, so that it could be picked up by the local freight train. When he came in at noon he noticed that there were four cars of loaded cotton standing on the house track, near the south end of the track, in such position that there was not room enough for him to get the empty flat car on the tracks and clear the derail, so that it would be necessary to move the loaded cars a few feet to the north before he could get the flat car on the track. The bridge crew were working about 2½ miles south of town, and when they quit work for the evening the foreman sent most of the men in on the motor car, with instructions to release the brakes on the four cars preparatory to shoving them further up the track. It was realized that the pile driver would have to hit the cars hard to move them, and it was the intention to have it run against them with what momentum it could gain. One of the crew, on arrival of the motor car, climbed up on the ladder at the northwest end of the car farthest north, released the brake, and went back and released the brakes on the other cars. About this time a railway clerk and one of the crew fastened one of the doors to one of the cars, walking around the north end of the cars; another person passed by the car about this time. The car farthest north was standing at this time a few feet across the footpath referred to. None of the parties releasing the brakes and fastening the door, just referred to, noticed any children around the car at the time. After performing the service referred to, the railway employés walked off some 70 feet to the southwest and watched the pile driver come in from the south and strike the cars; some discussion being had among some of the men as to whether it could move them. The testimony is conflicting as to whether the pile driver whistled, but there is testimony sufficient to support a finding that it did not. No lookout was stationed at the north end of the cars; the attention of the men being directed to the movements of the pile driver, as

stated. As the pile driver struck and the cars moved, a child screamed, and those near, on hurrying to the place, found the little Starr boy on his hands and knees a few feet west from the front end of the car farthest north and about 8 feet north of the path. The track at this place was in a slight cut, and a younger brother, about 6 years old, of the injured boy, was standing crying on the embankment near his brother. The older boy was found to be hurt, the muscles and flesh being torn from his leg below the knee, and he died from the shock the next day. It was "dusky dark" and a "right smart of a sand storm was blowing" at the time of the accident.

The plaintiff J. B. Starr lived on the east side of the tracks, and he owned a gin which was on the west side, some 300 yards in a northwesterly direction from the place of the accident. The crossing of the track where the accident occurred was in line between the home and the gin. The smaller boy had been at the gin with his father; the mother had sent the older boy for him, and just before the accident the father had directed the two boys to go home, and they left for that purpose. Mrs. Liles, a neighbor, arrived at the gin with word of the accident in about 8 or 10 minutes, according to plaintiff's testimony, after the boys left. No one appears, from the record, to have seen the boys from the time they left the gin until after the accident.

The jury found specifically: That the defendant was guilty of negligence, "in the matter of bumping the cars with the pile-driving machine, handled by the crew in charge of it, in the manner they did, or in using the said pile-driving engine outfit to bump said cars, or in failing to give a signal by blowing a whistle"; that the defendant was guilty of negligence "in the matter of not keeping a lookout for persons crossing at or about the path"; that such acts of negligence proximately caused the injury to the boy; that the path was generally used by the public, with the knowledge and permission of the defendant; that the boy was not negligent in being at the place he was injured at the time he was; and that the plaintiffs were not guilty of negligence in allowing the boy to cross the tracks at the time and place he did.

[1] The general principles of law governing the decision of such cases are well settled. In the case of T. & P. Railway Co. v. Watkins, 88 Tex. 20, 29 S. W. 233, the Supreme Court announces the law thus:

"The true rule is that it is the duty of the servants of the railroad company, operating its trains, to use reasonable care and caution to discover persons on its track, and a failure to use such care and caution is negligence on the part of such company, for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by the contributory negligence of the person injured, or of the person seeking to recover for such injury; and the circumstances under which the party injured went upon the track are merely evidence upon the issue of contributory negligence. If such circumstances show that the party injured was a wrongdoer or trespasser at the time of the injury, the issue of contributory negligence is, as a general rule, established as a matter of law, but not so in all cases. It results from the above that it was the duty of the railroad to use ordinary or reasonable care to discover and warn defendant in error, whether she be considered a trespasser or a mere licensee, and a failure to use such care was negligence, rendering the railroad liable for such damage as resulted therefrom, unless, under all the circumstances, defendant in error was guilty of negligence contributing proximately to her injury."

See, H. & T. C. Ry. Co. v. Sympkins, 54 Tex. 622, 38 Am. Rep. 632; M., K. & T. Ry. Co. v. Malone, 102 Tex. 269, 115 S. W. 1158; Ft. W. & D. C. Ry. Co. v. Longino, 54 Tex. Civ. App. 87, 118 S. W. 201; Id., 103 Tex. 250, 126 S. W. 8; St. Louis & S. F. Ry. Co. v. West, 174 S. W. 287.

It is appellee's theory that the boys, in obedience to the command of their father, were on the way home, using the footpath referred to; that as the older boy passed around the end of the car it was moved suddenly, as before described, and the injury resulted. This theory of the manner in which the accident happened is consistent with all the facts proven. Appellant has practically conceded that the finding of the jury as to negligence on its part in the sudden movement of the car, without warning and without having put a lookout in front of it, cannot be successfully attacked, but by its first seven assignments asserts, in various complaints of the rulings of the court below, that the evidence is insufficient to show that the injury was the proximate result of the negligence, since the evidence does not show how the injury was inflicted, nor what the little boy was doing at the time, so that it cannot be determined, either that proper precautions would have prevented the injury, or that it was not the result of some act of trespass of the boy himself.

The car moved only about half a car length, and the boy was found near the front end of it, so that it is evident that he must have been hurt by the front wheels of the car, and all possible explanations of the accident must be based on the fact that the older boy was either just in front of the car, or on it in some position at the north end, and his little brother near by, on the ground. Now, if a lookout had been stationed at the front end of the car, to give warning of its movement, it is a reasonable conclusion that the boy, no matter what his position might have been, would have been discovered and the accident prevented; so that the only theory left which occurs to us might aid appellant is that the boy may have been playing under the car, or was on it, or attempting to get on it, thus being a trespasser, guilty of contributory negligence, relieving the company from liability. It is not very likely that the boy was playing under the front end of

the car. It was getting dark, and a sandstorm was blowing, so that such a place would seem to have little attraction. Neither does the suggestion that he was attempting to get on the car to steal a ride seem very probable, except under a very limited state of circumstances. The car was merely bumped upgrade half a car length, its movement could have lasted but a few seconds, so that the boy, after the car started in motion, even if he was very near, could hardly have conceived the idea of mounting it and put the impulse into execution before it stopped. The pile driver did not usually come in on this track, and the boy would not have known that the car was to be moved, unless he had come to this conclusion from observing the action of the employés in releasing the brakes, etc., and at this time conceived the idea of getting on the car. The witnesses testified that it was sufficiently dark that a man would not have been noticed at any great distance.

[2] Of course, it is possible that the boy, in passing, led by some childish impulse, climbed up on the front end of the car, which was standing across the path, or otherwise wandered from the path for some other reason. If a man had left the gin to go home, and been injured at the place where the boy was injured, the suggestion that he was under the car, or on it, or attempting to get on it, without some further fact being shown to indicate some reason for such conclusion, would be rejected as unreasonable. The same knowledge of childish habits and impulses that would make reasonable the suggestion that possibly the boy was loitering along the path, or had strayed from it, being under or about the car in some manner, would perhaps be sufficient to warrant the jury in acquitting the boy of the charge of contributory negligence that might be imputed to these acts. For what would be contributory negligence in the adult would not be necessarily such in the child. St. Louis S. W. Ry. Co. v. Bolton, 36 Tex. Civ. App. 87, 81 S. W. 126; Ollis v. H. E. & W. T. Ry. Co., 31 Tex. Civ. App. 601, 73 S. W. 30.

[3, 4] However, any of the theories that might avail the appellant anything are based on the assumption that the child was a trespasser, guilty of contributory negligence, and should, we believe, for this reason, if for no other, be rejected, because the burden of proof was on the defendant to establish any facts constituting contributory negligence. Lee v. I. & G. N. Ry. Co., 89 Tex. 583, 36 S. W. 65; G., C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538. In the case of Lee v. I. & G. N. Ry. Co., supra, it had been found that the defendant was negligent, and the court, following a discussion of what the law would be, "if the deceased had been struck by the train in some manner not accounted for," says:

"The law presumes that the servants of the defendant were exercising due care in the oper-

ation of the train which killed Lee; but the plaintiff proved that they were not, which established her case. Upon the other hand, the law presumes that deceased was in the exercise of due care when he was killed, and it devolved upon the defendant to prove that he was not, in order to relieve itself of the liability fixed upon it by its negligent acts causing the death."

[5] These two little boys left the gin a few minutes before the accident under command to go home. We find them on the way home, at a place where, under the evidence, they had the right to be. If the car extended over the path, they could go around it, and the little boy was about where he would be if he had been struck as he started around the end of the car. The position of the younger brother is natural, as being behind, following the larger boy. They evidently could not have been at the place long before the accident. We think these facts sufficiently answer the pertinent questions put by the court in the case of T. & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1050, which a failure to answer was held to be fatal to plaintiff's right to recover. The negligence of the defendant is admitted, and, as we have seen, it reasonably appears that but for this negligence the injury to plaintiff's boy would not have resulted. No acts constituting contributory negligence on the part of the boy having been shown, we cannot, under the authorities cited, presume that the boy was doing something that might constitute contributory negligence.

We have not attempted to discuss the facts of the many cases which may be found relating to accidents of this kind, but have sought to ascertain the principles of law controlling the decisions and apply these to the particular facts in this case. The following cases, in addition to those we have already cited, will be found to be more or less analogous in the facts and legal principles involved: Washington v. M., K. & T. Ry. Co., 90 Tex. 314, 38 S. W. 764; G., C. & S. F. Ry. Co. v. Matthews, 99 Tex. 160, 88 S. W. 192; Id., 89 S. W. 983; Ft. Worth & Denver City Ry. Co. v. Longino, 54 Tex. Civ. App. 87, 118 S. W. 201; Ft. Worth & Denver City Railway Co. v. Broomhead, 140 S. W. 820; St. Louis S. W. Ry. Co. v. Bowles, 72 S. W. 452; T. & N. O. Ry. Co. v. Brouillett, 59 Tex. Civ. App. 337, 126 S. W. 287; Texas Midland Ry. Co. v. Crowder, 25 Tex. Civ. App. 536, 64 S. W. 90. A rather elaborate collection and discussion of the cases will be found in the case of St. Louis & S. F. Ry. Co. v. West, 174 S. W. 287.

[6, 7] Complaint is made by the eighth assignment of the admission of the testimony of J. B. Starr, as to the value of the services of a 15 year old boy, because damages based on such testimony would be too remote and speculative, and also because the witness had not shown himself qualified to testify as to such matter. The measure of damages as given by the charge of the court was:

"Such sum of money, if paid now, as will fairly and justly compensate plaintiffs for the loss of the pecuniary benefits they would in reasonable probability have received from the deceased boy, had he not died, from the 25th day of November, 1915, until he would have been 21 years of age, after deducting the reasonable cost of his maintenance and education until he should have arrived at the age of 21 years."

Plaintiff had testified that the boy was a bright, energetic, and obedient child; that he did a great deal of work in helping his mother, and on the farm; and that his services at the time of his death were worth to the plaintiff $300 per annum. Following this testimony, the plaintiff gave the testimony objected to, testifying that a 15 year old boy could do nearly a man's work; that he could help him around the gin and on the farm, and the services of such a boy were worth about $1.50 per day. We think testimony of this character was admissible for the purpose of aiding the jury in coming to a conclusion on the subject. While, of course, the jury did not have to conclude that the father would work the boy all the time as if he had been hired out by the year, the testimony afforded some basis on which to estimate the value of such services as they might find the boy would have rendered his parents. The father had older boys than this one; he worked men on the farm and in the gin, and while it was not shown by direct evidence that he knew the wages usually paid for labor, it is fairly evident from his testimony that he did. The determination of the preliminary question of qualification is largely within the discretion of the trial court, and under the circumstances we think the objection to the testimony goes more to its weight than its admissibility.

[8] The tenth assignment complains of the giving of the charge, as above quoted, as to the measure of damages, because it, as appellant asserts, assumes that the boy would have reached the age of 21 years. We do not think this objection to the charge is well taken. The age of maturity is merely the limit of the time in which the parents would be entitled to the services of the boy. The jury were told that the measure of plaintiff's recovery was the pecuniary benefits they would "in reasonable probability have received" during such time. The probability of the boy's death during the time would, we believe, be embraced within this statement.

[9, 10] The appellant requested the court to submit an issue to the jury as to whether the boy was at the time he was injured in the path, and by its ninth assignment complains of the court's action in refusing to submit the issue as requested. The evidence is to the effect that the path was about two feet wide, and all of the testimony tends to show that the north end of the car extended over this path some few feet. Persons traveling the pathway would be expected to walk around the end of the car standing stationary

in this way and should be treated in the same manner as if they were literally in the path. Cyc. vol. 33, pp. 931, 932. So we do not think an answer to the question would assist in determining the liability of the defendant in this case. The plaintiff alleged that the child, when struck, was "passing along said public road or crossing, and crossing the track along said public road or crossing," and appellant contends that, if the issue had been submitted and answered in the negative, it then could have urged a variance between the allegations and the proof. The testimony offered by the plaintiffs is to the effect that the car extended a few feet across the track, and under their theory the child was necessarily struck while literally out of the path, so that the question of variance could have been raised on the presentation of the evidence.

[11] The evidence shows that there was a regular public crossing for vehicles and travelers of all classes over defendant's track near the depot some 200 yards north of the place of the accident; and by the eleventh, twelfth, and thirteenth assignments appellants complain of the action of the court in refusing to submit special issues requested by it as to whether there were two ways of about equal distance from plaintiff's gin to his home, one safe and the other unsafe, and whether such facts were known to the plaintiff. Both ways crossed all three of the tracks above described. There was no switch engine at Odell, and no train in sight when the boys left the gin. The pile driver did not usually do switching, and usually stood on the passing track some distance from where the path crossed the tracks. The defendant pleaded that the plaintiffs were guilty of negligence in allowing the child to go upon and across defendant's tracks, and that the boy was guilty of negligence in being on the track at the time he was struck, but did not specifically plead contributory negligence in the choice of routes. We think that under these circumstances this issue was not in the case. T. & P. Ry. Co. v. Johnson, 34 S. W. 192; Id., 89 Tex. 519, 35 S. W. 1042. However, if the issue had been pleaded, we do not think any harm could have resulted from failure to submit it. The testimony does not indicate that the plaintiff or the child had any reason to believe that the path was not as safe as the road crossing, nor suggest any dangers incident to its use that might not also be incurred at the road crossing.

[12] The fourteenth assignment complains of the verdict as being excessive. We have already referred to plaintiff's testimony as to the kind of boy the deceased was and as to the value of his services. There is no rule by which we can make any sort of accurate estimate as to the amount of damages in such cases, so that we could not, with any confidence, say that the amount awarded here was excessive. There is nothing to

show that the jury was actuated by any improper motive in coming to its conclusion, and we are not prepared to say that the amount awarded is so large as to indicate such fact. We do not feel at liberty to disturb the verdict.

[13, 14] The defendant, when the case was called for trial, made its first application for a continuance, on account of the absence of Clyde Nations and Mrs. J. M. Liles. The application stated: That the defendant expected to prove by the witness Clyde Nations that the boy stated, a few minutes after he had received his injuries and in the presence of the said Clyde Nations, that he was under the car which caused the injuries to him at the time it began to move, and that he tried to and did run out from under said car. That defendant expected to prove by Mrs. Liles that the injured boy and his brother were playing at her home with her children some time during the evening, and left her house for their home a sufficient length of time before the accident to have enabled them to have reached their home. That the witness Clyde Nations was at the time of the accident in the service of the defendant, subsequently leaving it and going into the service of the Texas & Pacific Railway Company, and said company had agreed to allow him to attend the trial. That he had promised to be present at the trial, but was not because he was unable to attend, being sick in the hospital at Marshall, Tex. That Mrs. Liles' husband was in the employ of the defendant in another county, but both the husband and the wife had promised to attend the trial, but the wife did not do so because she was sick and unable to attend. That defendant did not know that said witness could not attend the trial until the day preceding the call of the case. The affidavit to the motion was made by one of the attorneys, who stated that the facts stated in the motion were true within his knowledge and belief. The court appended a qualification to the bill of exceptions, complaining of the action of the court in overruling the motion for continuance, stating that the case had been set for trial by agreement of counsel about a week before it was called for trial, and the motion was indefinite as to when there had been any communication with said witness, and no showing of any effort to get their depositions. The application was not a statutory one, being made on knowledge and belief, and no showing made as to what facts were stated on knowledge and what on belief, nor the source of information on which the belief was founded. The witnesses resided out of the county, no interrogatories had been propounded to them, neither of the witnesses were in the service or control of the defendant, and it was not shown how long they had been sick, nor when their attendance was requested after the case was

set for trial. The application was thus addressed to the discretion of the lower court. We do not think the record shows an abuse of such discretion. K. C., M. & O. Ry. Co. of Texas v. Wells, 142 S. W. 670; St. Louis S. W. Ry. Co. v. Harkey, 39 Tex. Civ. App. 523, 88 S. W. 506.

Affirmed.