## Omaha Street Railway Company v. James S. Cameron.

FILED JANUARY 3, 1895.    No. 5745.

1. **Street Railways:** NEGLIGENCE: QUESTIONS OF FACT. Cameron sued a street railway company for damages sustained by him by reason of one of its cars striking and overturning his buggy while he was driving it across the railway company's tracks at the intersection of two streets. The court refused to give an instruction tendered by the railway company as follows: "While the law requires that the railway company shall use all ordinary care and caution while running its trains by intersecting streets, still travelers upon the street at such intersections are likewise required to use care and caution in getting on the street in front of the moving trains. And where the plaintiff, as in this case, was familiar with Twenty-fourth street, and with the street car tracks thereon, and was familiar with the fact that the said street cars are operated by electricity, and are known to run at considerable speed, it was his duty in driving upon this street from an intersecting street to use care and caution to avoid coming into collision with the street cars, and the failure of the plaintiff to use such care and caution, if he did so fail to use such care and caution, would prevent recovery of damages; and if from the whole case you find that the plaintiff was guilty of such carelessness on his part, then your verdict should be for the defendant." *Held,* That the court did not err in refusing to give the instruction, if for no other reason, because of the fact that it required the court to tell the jury that Cameron was possessed of certain knowledge and familiar with certain facts and circumstances, and that certain duties resulted therefrom, when this knowledge and these facts and circumstances if known and possessed by Cameron were elements for consideration by the jury, and it was for the jury to say what duties devolved on him by

reason thereof, and whether or not in driving upon the railway tracks in the manner he did, he was exercising ordinary care.

2. ———: RELATIVE RIGHTS OF COMPANY AND TRAVELER. The court instructed the jury: "You are instructed that the relative rights and duties of street cars and travelers on the highway where they are passing each other, or going in the same direction, is qualified to a certain extent at street intersections. At such an intersection each have the right to cross, and must cross. Neither has a superior right to the other. The right of each must be exercised with due regard to the right of the other, and the right of each must be exercised in a reasonable and careful manner, so as not unreasonably to abridge or interfere with the right of the other." *Held,* That the instruction was correct.

3. ———: CONTRIBUTORY NEGLIGENCE: HARMLESS ERROR. In such case the court instructed the jury: "The rule of law is that one guilty of contributory negligence cannot recover in an action; but if you find from the evidence in this case that there was negligence on the part of both plaintiff and defendant the plaintiff may be entitled to recover, unless you find from the evidence that the plaintiff could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence. And if you find that the plaintiff could have so done, but has failed in this particular, then he cannot recover herein." *Held,* That the railway company was not prejudiced by the giving of this instruction. The court suggests a doubt as to the propriety of giving an instruction couched in such general language.

4. ———: NEGLIGENCE. The evidence examined, and *held* to support the finding of the jury that the injury of the plaintiff resulted from the negligence of the railway company, the plaintiff himself being at the time in the exercise of ordinary care.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*John L. Webster,* for plaintiff in error.

*Breckenridge, Breckenridge & Crofoot, contra,* cited, as to the relative rights of traveler and company: *O'Neill v. Drydock E. B. & B. R. Co.,* 29 N. E. Rep. [N. Y.], 85; *Shea v. St. Paul City R. Co.,* 52 N. W. Rep. [Minn.], 902. In support of the instructions: *Omaha Horse R. Co. v.*

*Doolittle*, 7 Neb., 485; *Union P. R. Co. v. Rasmussen*, 25
Neb., 813; *Lynn & B. R. Co. v. Boston & L. R. Co.*, 114
Mass., 88.

RAGAN, C.

James S. Cameron sued the Omaha Street Railway Company, hereinafter called the "Railway Company," for damages in the district court of Douglas county. Cameron pleaded that the Railway Company was a corporation operating a street railway in the city of Omaha, on Twenty-fourth street, among others, the motive power of which was electricity, and for cause of action against the Railway Company alleged in substance, that on Twenty-fourth street the Railway Company had two tracks and this street was intersected at right angles by Binney street running east and west; that about 10 o'clock at night on November 27, 1890, Cameron with a single horse and buggy was driving west on Binney street; that he drove on the intersection of the two streets, crossed the east track of the Railway Company and while his buggy was on the west track it was struck by a south bound car on said west track, the buggy destroyed and Cameron severely injured; that Cameron at all times was in the exercise of ordinary care, and that the damage and injury sustained resulted from the negligence of the Railway Company in running its car south in the west track on Twenty-fourth street and across the intersection of Binney street at a high and negligent rate of speed, and from the neglect of the Railway Company to give any signal or warning of the approach of the car to the intersection of Binney and Twenty-fourth streets, by bell or otherwise. The answer of the Railway Company was, in substance, a general denial. Cameron had a verdict and judgment and the Railway Company brings the case here for review.

1. The eminent counsel for the Railway Company has devoted a very large part of his argument in this court to showing that by the use of proper care Cameron could

have seen the approaching train and have kept off the rail-
way track in front of it; that Cameron drove on the rail-
way tracks at the streets' intersection at a negligent and high
rate of speed; that a warning was given of the approach
of the car to the intersection of Twenty-fourth and Binney
streets by the ringing of the car bell; that when Cameron
drove on the track the car was too close to him to be
stopped sooner than it was; that the car was not running
at an unusual or negligent rate of speed and that it is doubt-
ful if the train collided with Cameron's buggy. These are
all arguments that could have been and doubtless were urged
to the jury. They involve only questions of fact, concerning
each one of which the evidence was more or less conflicting.

The theory of Cameron was that he drove west on Bin-
ney street at the rate of five or six miles an hour; that
before reaching the intersection of that street with Twenty-
fourth street he listened for a signal or noise of approach-
ing cars and heard none; that as he drove into Twenty-
fourth street he looked north for an approaching car and
saw none; that no bell was rung nor any other warning
given of the approaching train; that he drove across the
east track of the Railway Company and was almost over
the west track with the head of his horse turned slightly to
the southwest for the purpose of driving down Twenty-
fourth street, on the west side of the west track, when a
car of the Railway Company, running south on the west
track at the rate of fifteen or twenty miles an hour, struck
his buggy and overturned it, damaging it and injuring
him; and the evidence tends to support his theory. On
the other hand, the contention of the Railway Company
is that Cameron was driving west on Binney street at
a negligent and high rate of speed; that he did not stop
before driving on the Railway Company's tracks on
Twenty-fourth street; that he did not listen for an ap-
proaching train or for the signals of one; that when he
drove in Twenty-fourth street and before driving on its

tracks he did not look to see if a train was approaching from the north; that its train was running at a usual rate of speed; that a bell or gong was sounded as the train approached the Binney street crossing; and that as a matter of fact its train did not collide with Cameron's buggy, but that the latter in attempting to escape from the approaching train, drove his buggy against the curbstone and overturned it; and, unless it be the last contention mentioned, the evidence tended to support the theory of the Railway Company. Which of these theories is or was correct was for the jury to determine. By its verdict it has adopted the theory of Cameron, and we cannot say that its finding in that respect lacks sufficient evidence to support it. (*American Water-Works Co. v. Dougherty*, 37 Neb., 373; *Missouri P. R. Co. v. Baier*, 37 Neb., 235; *Omaha Street R. Co. v. Craig*, 39 Neb., 601; *Omaha & R. V. R. Co. v. Morgan*, 40 Neb., 604; *Chicago, B. & Q. R. Co. v. Oleson*, 40 Neb., 889.)

2. It is also assigned as error that the district court erred in giving to the jury on its own motion instruction No. 3, as follows: " The rule of law is that one guilty of contributory negligence cannot recover in an action; but if you find from the evidence in this case that there was negligence on the part of both plaintiff and defendant, the plaintiff may be entitled to recover, unless you find from the evidence that the plaintiff could by the exercise of ordinary care have avoided the consequences of the defendant's negligence. And if you find that the plaintiff could have so done, but has failed in this particular, then he cannot recover herein." We do not think the Railway Company was prejudiced by the giving of this instruction. At its request the court instructed the jury: (3) " The jury are further instructed that if they find from the evidence that the injury of Cameron was produced by a car coming in collision with his buggy, still the plaintiff cannot recover if he recklessly and carelessly drove onto Twenty-fourth

street from Binney street without stopping and looking to
see if a car was approaching, if his failure to stop and look
for an approaching train contributed to the accident."
Again, at the request of the Railway Company the court
instructed the jury (4) that if Cameron "failed to use
proper precautions, but regardless of his personal safety
drove on Twenty-fourth street at a rapid rate of speed and
upon the track in front of the train without any warning,
then he took upon himself the risk of danger, and that
said conduct constituted contributory negligence on his part
which would prevent recovery." This last instruction was
wrong. It was not for the court to say whether Cameron's
conduct under the circumstances rendered him guilty of
contributory negligence; that was for the jury. (See the
authorities cited above.)

But because the court gave these instructions to the jury
the Railway Company could not have been prejudiced by
instruction No. 3, given to the jury on the court's own mo-
tion; nor can we say that said instruction No. 3 was mis-
leading or erroneous as applied to the facts in this case.
There was some evidence which tended to show that the
car which collided with Cameron's buggy was running at
a rate of fifteen or twenty miles an hour, and that no warn-
ing was given by the ringing of a bell or otherwise of the
approach of this car to the street crossing; and there was
some evidence which tended to show that Cameron drove on
this crossing at a high rate of speed without looking or listen-
ing for an approaching car. Now the instruction told the
jury in effect that if it should find that Cameron was guilty
of negligence in going on the track in the manner that he did,
and that the Railway Company was also guilty of negli-
gence in running its train at a great rate of speed on said
intersection without giving warning of its approach thereto,
that still Cameron might recover, unless the jury should be-
lieve that Cameron, by the exercise of ordinary care after he
discovered the approaching train, could have avoided the

consequences of the negligence of the Railway Company
and failed to do so.

In *Omaha Horse R. Co. v. Doolittle*, 7 Neb., 481, it is
said : "Where the carelessness of the plaintiff as well
as that of the defendant operates directly to produce the
injury complained of, the plaintiff is not entitled to recover;
but in cases of mutual negligence the plaintiff is entitled
to recover, unless he might by the exercise of ordinary care
have avoided the consequences of the defendant's negli-
gence." The instruction complained of is within the rule
announced in this last case, and we cannot say that the
court erred in giving it.

It is doubtless true that a party's negligence will not
alone defeat his right to recover, but it must further appear
that his negligence either caused or contributed to the in-
jury for which he sues; and it is also true that if a plaintiff
and defendant are both guilty of some negligence, that if
the negligence which is the proximate cause of the injury
was that of the defendant, and the plaintiff, after discover-
ing this negligence, exercised ordinary care to escape the
threatened danger and failed, he may still recover. But
we venture to suggest a doubt as to the propriety of giving
an instruction couched in such general language as the one
under consideration. In such cases as the one at bar the
plaintiff has been injured, and the inquiry for the jury is:
By whose fault was the plaintiff so injured? If the proxi-
mate cause of the plaintiff's injury was his own negligence,
he cannot recover; if the proximate cause of his injury
was the negligence of the defendant, he may.

3. The third error assigned is that the court erred in
refusing to give to the jury instruction No. 5 requested
by the railway company, as follows: "While the law re-
quires that the railway company shall use all ordinary care
and caution while running its trains by intersecting streets,
still travelers upon the street at such intersections are like-
wise required to use care and caution in getting on the

street in front of the moving trains. And where the plaintiff, as in this case, was familiar with Twenty-fourth street, and with the street car tracks thereon, and was familiar with the fact that the said street cars are operated by electricity, and are known to run at considerable speed, it was his duty in driving upon this street from an intersecting street to use care and caution to avoid coming into collision with the street cars, and the failure of the plaintiff to use such care and caution, if he did so fail to use such care and caution, would prevent recovery of damages, and if from the whole case you find that the plaintiff was guilty of such carelessness on his part, then your verdict should be for the defendant." We do not think the refusal of the court to give this instruction was error, for two reasons: First, we doubt the propriety of the district court's telling the jury in this case that Cameron was familiar with Twenty-fourth street and with the street car tracks thereon; and was familiar with the fact that the cars were operated by electricity and were known to run at considerable speed. And, in any event, it is clear that the district court did not err in refusing to give the instruction, if, for no other reason, because of the fact that it required the court to tell the jury that Cameron was possessed of certain knowledge and familiar with certain facts and circumstances and that certain duties resulted therefrom; when this knowledge and these facts and circumstances, if known and possessed by Cameron, were elements for consideration by the jury in determining what duties devolved on him by reason thereof, and whether or not Cameron, in driving upon these railway tracks in the manner he did, was exercising ordinary care. Another reason why the court did not err in refusing to give this instruction is that the district court had already given all that part of the instruction to which the railway company was entitled in the fourth and sixth instructions requested by the railway company, and in which instructions the court told the jury that it was the duty of Cam-

eron to use care and prudence when driving on the inter-
sections of Twenty-fourth and Binney streets to ascertain
that a car was not in immediate proximity; and that if
they found that Cameron carelessly and negligently drove
on such intersection at a rapid rate of speed without tak-
ing proper precautions to find out whether a train was ap-
proaching, and the result of such carelessness was a collision
with the street car, he could not recover.

4. The fourth assignment of error argued is that the
court erred in giving instruction number one asked by
Cameron. In the motion for a new trial, and in the petition
in error as well, it is assigned that the court erred in giving
instructions number one, number two, and number three,
asked by Cameron. The third of these instructions is as
follows: "You are instructed that the relative rights and
duties of street cars and travelers on the highway where
they are passing each other or going in the same direction
is qualified to a certain extent at street intersections. At
such an intersection each have the right to cross and must
cross. Neither has a superior right to the other. The
right of each must be exercised with due regard to the
right of the other, and the right of each must be exercised
in a reasonable and careful manner so as not to unreason-
ably abridge or interfere with the right of the other." We
entirely approve of this instruction, and since the court did
not err in giving all three of the instructions the assign-
ment of error must be overruled. There is no error in the
record and the judgment of the district court is

AFFIRMED.