DAHMER, RESPONDENT, *v.* NORTHERN PACIFIC RAILWAY COMPANY ET AL., APPELLANTS.

(No. 3,278.)

(Submitted September 20, 1913.   Decided October 25, 1913.)

[136 Pac. 1059.]

*Personal Injuries—Railroads—Stations—Duty to Keep Lookout—Technical Trespassers—Last Clear Chance Doctrine—Through Trains—Discovery of Peril—Insufficient Evidence.*

Personal Injuries—Railroads—Last Clear Chance Doctrine—When Applicable.

1. A case calling for the application of the last clear chance doctrine, in a personal injury action, must embody the following three elements which must concur: (1) The exposed condition brought about by the negligence of the person injured; (2) the actual discovery by the defendant of the perilous situation of the person; and (3) defendant's failure to thereafter use ordinary care to avert the injury; hence the doctrine was inapplicable where the first requisite, *i. e.*, antecedent negligence on the part of the injured person, was lacking.

[As to application of last clear chance rule to persons standing or walking close to railroad track, see note in Ann. Cas. 1912B, 1242. As to concurrent negligence of plaintiff as defeating recovery under last clear chance doctrine, see note in Ann. Cas. 1912B, 888.]

Same.

2. The rule of the last clear chance as stated in paragraph 1, *supra*, does not impose upon the defendant in a personal injury action the obligation to maintain a lookout at all times to discover anyone who may be in a position of peril, but includes those cases in which actual discovery of the peril is a just inference from the evidence, though denied by defendant, as well as those in which the discovery is admitted or not denied, and liability is sought to be avoided on other grounds.

Same—Railroads—Stations—Duty to Maintain Lookout.

3. A railway company must, under penalty of liability for resultant injury because of failure of duty in this regard, use special care and watchfulness in the running of its trains when approaching points along its line where the presence of persons, especially in large numbers, may reasonably be anticipated.

Same—Technical Trespassers—Duty of Railways.

 4. Notwithstanding one who goes upon the premises of a railway company at its invitation to transact business with it or to meet a person on an incoming train is technically a trespasser if he gets upon the track at places at which crossings are not provided, the company must use reasonable precaution to avoid injuring him.

Same—Railways may Run Through-trains—Notice to Public.

 5. A railway company may run through-trains which stop only at principal stations, and persons desiring to know when and where such trains stop must ascertain the information from its agents, and conduct themselves accordingly, it not being incumbent upon a carrier to bring home to the public notice of such matters.

Same—Limitation of Duty to Keep Lookout.

 6. The duty of a railroad company to keep a lookout for persons when running a through-train past stations at remote and out of the way places must be measured by the character of such places, the time of the day or night when they are reached, and other like circumstances.

 [As to duty of railroad company to trespassers on track, see note in 30 Am. St. Rep. 53.]

Same.

 7. *Held,* under the rule declared in paragraph 6, *supra,* that defendant railway company was under no greater obligation to keep a lookout at a station which was passed by one of its through-trains at an early hour in the morning, when it could not reasonably be anticipated that persons were present to become passengers or engage in the transaction of business with its agent, than it was in the open country or at any other place at which persons were not expected to be.

Same—Discovery of Peril—Evidence—Insufficiency.

 8. Evidence *held* insufficient to justify the conclusion that defendant locomotive engineer discovered the position of plaintiff—who, while waiting at about 1 o'clock in the morning for the arrival of a passenger train at a small station where it was not scheduled to stop, and which he had no reason to think would stop other than information to that effect by a friend, had been beaten into partial insensibility by thugs and fallen upon the tracks, where he was run over while endeavoring to crawl to safety—in time to avoid injuring him.

*Appeal from District Court, Yellowstone County. Geo. W. Pierson, Judge.*

Action by John Dahmer against the Northern Pacific Railway Company and Michael McDonough. Plaintiff had judgment, and defendants appeal from it and an order denying them a new trial. Reversed and remanded for new trial.

*Messrs. Gunn, Rasch & Hall,* and *Mr. W. M. Johnston,* for Appellants, submitted a brief. *Mr. Carl Rasch* argued the cause orally.

The question is presented on this appeal whether a liability for damages exists under the doctrine of "last clear chance,"

where a person is injured upon a railroad track, at a place where he has no right to be, and where his presence could not be reasonably expected or anticipated, because of the failure of the engineer in charge of the train to discover such person's position and peril upon the track in time sufficient to stop the train and avoid injuring him. It is of no importance how plaintiff got upon the track, because, in the absence of actionable negligence on the part of the engineer, it is immaterial whether his being there was voluntary or due to "some circumstance beyond his control," as no recovery can be had in either case. (2 Thompson on Negligence, sec. 1792; *Missouri Pac. Ry. Co.* v. *Brown* (Tex.), 18 S. W. 670; *Gulf C. & S. F. Ry. Co.* v. *Bolton,* 2 Ind. Ter. 463, 51 S. W. 1085; *Oklahoma City R. Co.* v. *Barkett,* 30 Okl. 28, 118 Pac. 350; *O'Keefe* v. *Chicago etc. R. Co.,* 32 Iowa, 467.) Whatever the duty of the defendant engineer may have been to discover a person crossing the track in a proper manner and for a lawful purpose in going to or returning from the station, no such duty rested upon him with respect to the plaintiff lying upon the track at a place where he had no right to be, and in a position that could not have been reasonably expected or anticipated. (*Kelly* v. *Michigan Cent. R. Co.,* 65 Mich. 186, 8 Am. St. Rep. 876, 31 N. W. 904; *Cleveland etc. Ry. Co.* v. *Marsh,* 63 Ohio St. 236, 52 L. R. A. 142, 58 N. E. 821; *Ryerson* v. *Bathgate,* 67 N. J. L. 337, 57 L. R. A. 307, 51 Atl. 708; *Pennsylvania R. Co.* v. *Martin,* 111 Fed. 586, 55 L. R. A. 361, 49 C. C. A. 474; *Diebold* v. *Pennsylvania R. Co.,* 50 N. J. L. 478, 14 Atl. 576; *Price* v. *Pecos Valley etc. Ry. Co.,* 15 N. M. 348, 110 Pac. 565; *Chicago R. I. & P. Ry. Co.* v. *Eininger,* 114 Ill. 79, 29 N. E. 196; *Neely* v. *Charlotte etc. R. R. Co.,* 33 S. C. 136, 11 S. E. 636; *St. Louis etc. Ry.* v. *Monday,* 49 Ark. 257, 4 S. W. 782; *Carrington* v. *Louisville etc. R. Co.,* 88 Ala. 472, 6 South. 910; *Texas etc. Ry. Co.* v. *Hare,* 4 Tex. Civ. App. 18, 23 S. W. 42; *Sindlinger* v. *Kansas City,* 126 Mo. 315, 26 L. R. A. 723, 28 S. W. 857; *Newport News & M. V. Co.* v. *Howe,* 52 Fed. 362, 3 C. C. A. 121; see, also, *Lynch* v. *Great Northern R. Co.,* 38 Mont. 511, 100 Pac. 616; *Carman* v. *Montana Central R. Co.,*

32 Mont. 137, 79 Pac. 690; *Egan* v. *Montana Central Ry. Co.*, 24 Mont. 569, 63 Pac. 831; *Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373; *Southern Ry. Co.* v. *Drake*, 166 Ala. 540, 51 South. 996.) The doctrine, "held by a few courts only," imposing liability where discovery "might have" been made by the exercise of ordinary care is "incapable of vindication upon principle." (2 Thompson on Negligence, sec. 1711.)

Reasonable care to avoid injury after discovery of plaintiff's position and peril was all the law demanded. A duty to discover is not imposed in cases of this kind. The first duty of defendant engineer was that which he owed to the passengers in his charge upon the train; and as to them, he was required to "use the utmost care and diligence for their safe carriage" (Rev. Codes, sec. 5300; *Bemis* v. *Connecticut etc. R. R. Co.*, 42 Vt. 375, 1 Am. Rep. 339); and in order to perform his full duty to them, it was incumbent upon him not only to watch the track, but the order board at the station and the junction switch beyond the station as well. In *Chesapeake & O. R. Co.* v. *Farrow's Admx.*, 106 Va. 137, 10 Ann. Cas. 12, 55 S. E. 569, it was held that where the circumstances were such that the duty to keep a lookout was owing to the injured person, which was not required in the case at bar, no negligence could be predicated upon the failure to observe a person upon the track in time to avoid striking him, if the person in charge of the train and the engine was at the time "engaged in the performance of a necessary duty which he could not neglect." (See, also, *Howard* v. *Louisville etc. Ry. Co.*, 67 Miss. 247, 19 Am. St. Rep. 302, 7 South. 216; *O'Brien* v. *Wisconsin Cent. R. Co.*, 119 Wis. 7, 96 N. W. 424; *Rogers* v. *Georgia R. R. Co.*, 100 Ga. 699, 62 Am. St. Rep. 351, 28 S. E. 457; *Eddy* v. *Sedgwick* (Tex.), 18 S. W. 564; *Brammer's Admr.* v. *Norfolk etc. R. Co.*, 104 Va. 50, 51 S. E. 211.)

*Messrs. Walsh, Nolan & Scallon,* for Respondent, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

The respondent at the railway station to meet a passenger on the incoming train was there in such a capacity that the com-

pany owed him the duty of exercising reasonable care for his safety. "Persons, however, having duties to perform incidental to the departure and arrival of passengers, and all persons having business with the company, such as shippers and consignees of freight, are entitled to the use of the company's premises, and are entitled to the same protection as passengers from injury while thereon." (Thompson on Negligence, sec. 2686; 23 Am. & Eng. Ency. of Law, 736; 33 Cyc. 762; White on Personal Injuries on Railroads, sec. 867; *Rowley* v. *Chicago, M. & St. P. R. Co.,* 135 Wis. 208, 115 N. W. 865; *Dowd* v. *Chicago, M. & St. P. Ry. Co.,* 84 Wis. 105, 36 Am. St. Rep. 917, 20 L. R. A. 527, 54 N. W. 24; *Hamilton* v. *Texas & Pac. Ry. Co.,* 64 Tex. 251, 53 Am. Rep. 756; *Atchison etc. Ry. Co.* v. *Cogswell,* 23 Okl. 181, 20 L. R. A. (n. s.) 837, 99 Pac. 923; *Chesapeake & O. R. Co.* v. *Fortune,* 107 Va. 412, 59 S. E. 1095; *Texas & Pac. Ry. Co.* v. *Best,* 66 Tex. 116, 18 S. W. 224; *Denver & R. R. Co.* v. *Spencer,* 27 Colo. 313, 51 L. R. A. 121, 61 Pac. 606; *Winscott* v. *Chicago & A. R. Co.,* 151 Mo. App. 378, 131 S. W. 749; *Louisville & N. R. Co.* v. *Smith,* 135 Ky. 462, 122 S. W. 806; *Union Depot & Ry. Co.* v. *Londoner* (Colo.), 114 Pac. 316; *Dowd* v. *Chicago M. & St. P. R. Co.,* 84 Wis. 105, 36 Am. St. Rep. 917, 20 L. R. A. 527, 54 N. W. 24; Elliott on Railroads, 2d ed., sec. 1256.) The respondent, then, was at the station not as a trespasser, but as one to whom the company and its employees owed the duty of exercising reasonable care to see that he was not injured. Injured on the platform, through its failure to exercise this care, he could recover. Is he placed in a more unfavorable situation by being upon the track without any fault of his? We contend that he is not, and we contend likewise that, in connection with his being upon the track, as he was, he was .in no manner negligent. A trespasser is one who does an unlawful act or a lawful act in an unlawful manner to the injury of the person or property of another. (*Little* v. *State,* 89 Ala. 99, 8 South. 82.) A trespasser is a wrongdoer. (*Smalley* v. *Southern Ry. Co.,* 57 S. C. 243, 35 S. E. 489.) A person not *sui juris* cannot be a trespasser in the legal signification of the term. (*Barre* v.

*Reading City Passenger Ry.,* 155 Pa. 170, 26 Atl. 99.)   It is well to bear in mind that the respondent was upon the track without fault on his part, and so being there, the company and its employees owed him the duty of exercising reasonable diligence to prevent the infliction of injury upon him.   (*Bourrett* v. *Chicago & N. W. Ry. Co.* (Iowa), 121 N. W. 380; *Brackett, Admr.,* v. *Louisville & N. R. Co.,* 33 Ky. Law Rep. 921, 111 S. W. 710; *International & G. N. R. Co.* v. *Jackson,* 41 Tex. Civ. App. 51, 90 S. W. 918.)

Most of the cases cited in appellants' brief discuss the doctrine of the last clear chance, as applied to trespassers.   Appellants assume as an admitted fact that the respondent was a trespasser, but, as shown, this is an assumption that cannot be sustained.   For the sake of argument, however, and more for the purpose of discussing the doctrine in the abstract, we wish to state a consideration of the cases of *Melzner* v. *Northern Pac. R. Co.,* 46 Mont. 162, 127 Pac. 146, and *Haddox* v. *Northern Pac. R. Co.,* 46 Mont. 185, 127 Pac. 152, justifies the assumption that, in the case of one guilty of negligence to whom a duty is owing, the doctrine announced in the *Neary Case* (*Neary* v. *Northern Pac. R. Co.,* 37 Mont. 461, 19 L. R. A. (n. s.) 446, 97 Pac. 944) is the rule in this jurisdiction, and as to a trespasser the fixed rule has not yet been declared.   For the purpose of settling the question in this jurisdiction, we insist that, in the application of the doctrine of the last clear chance, as applied to a trespasser on a railroad track where persons are expected to be, it would be barbarous to hold that an engineer may be permitted to operate his train without any duty resting on him to look ahead, so as to protect those who may be on the track, operating as he does so deadly a contrivance as a moving locomotive.   The overwhelming weight of authority in this country and in England is to the effect that no duty to look out obtains where the presence of a trespasser is not anticipated, as in the case of running in the country; but where trespassers are anticipated, equally true is it that the overwhelming weight of authority is to the effect that the duty to look out obtains.   The supreme

court of Missouri, in *Eppstein* v. *Missouri Pac. R. Co.,* 197 Mo. 720, 94 S. W. 967, said: "Where the trespasser is on the track in a place where the company has reason to anticipate the presence of persons, it owes him a lookout duty." (See, also, *Chesapeake & O. R. Co.* v. *Nipp,* 125 Ky. 49, 100 S. W. 246; *Garner* v. *Trumbull,* 94 Fed. 321, 36 C. C. A. 361; *Johnson* v. *Louisville & N. R. Co.,* 122 Ky. 487, 91 S. W. 707; *Fleming* v. *Louisville & N. R. Co.,* 106 Tenn. 374, 61 S. W. 58; *Texas Midland Co.* v. *Crowder,* 25 Tex. Civ. App. 536, 64 S. W. 90; *Chesapeake & O. R. Co.* v. *Rodgers,* 100 Va. 324, 41 S. E. 732.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

A jury having returned a verdict for damages against the defendants for a personal injury alleged to have been inflicted upon plaintiff through their negligence, they have appealed from the judgment entered thereon and an order denying them a new trial. The accident occurred at Huntley, a small village in Yellowstone county, at the junction of the Chicago, Burlington & Quincy Railway with that of the defendant railway company. Both roads extend east and west through the village, the companies making use of the same depot or station, the track of the defendant company, with platform for the receipt of freight and the accommodation of passengers, being on the side toward the north, that of the other company on the side toward the south. Immediately north of the defendant company's track is a driveway of ordinary width, and persons going to or coming from the station on that side are compelled to cross the driveway and the track. For the accommodation of those who approach the station on foot the defendant company has provided a gravel or cinder path extending from the principal street of the village to the north line of the railway. From the end of the path the waiting-room, which is at the west end of the station building, is reached by going directly south to the east end of the platform and thence west, or by going southwest to the platform to a point in front of the door opening into the waiting-room.

These lines of travel are used indifferently.   The evidence does
not disclose how those who come and go by conveyances reach
the station, but there is some basis for the inference that they
must alight at the driveway and gain the station by crossing
the track.   So far as the record shows, access to it can be gained
only in the way stated.   At the time of the accident the plain-
tiff was temporarily in the village of Huntley on business and
was stopping at a hotel north of the station.   On the evening
before it occurred he was expecting his mother to arrive on a
train designated as No. 4, due from the west at about 8 o'clock.
He ascertained, however, that No. 4, being several hours late,
would not arrive until after midnight.   He was also expecting
to meet a business acquaintance who he claimed was to arrive
on a train designated as No. 3, from the east, which was due
at 1:18 o'clock.   Accordingly, he went to the station some fifteen
or twenty minutes after midnight.   Having found that No. 4
would not arrive until some two and a half hours later, he
remained awaiting the arrival of No. 3.   As this train ap-
proached he stood on the east end of the platform observing it.
When it was yet at a distance of eight or nine hundred feet
from the station someone dealt him from behind a heavy blow
upon the head, from which he staggered and fell from the plat-
form upon the rails, being for the moment "partially stunned."
While he was in the act of crawling off the track toward the
north, the train came upon him inflicting such injuries that he
thereby suffered the loss of both feet.   To this narrative may be
added the statement of the plaintiff as to his situation at the
moment he was caught by the train: That in his effort to escape
he had gotten clear of the rail except his right foot, and that
as he was drawing it over it was caught by a piece of wire lying
near the rail, which caused a delay of a few seconds—a sufficient
time to allow the wheels to catch him.   The left foot, he stated,
must have been drawn under the wheels as he was rolled over by
the impact of the wheels with his right foot.   That this account
is probably correct finds support in the fact that on the follow-
ing morning witnesses who went to look over the ground found

a wire lying near the north rail along the side of the path lead-
ing from the platform where the plaintiff was picked up after
the train had passed, and also by the fact that his right foot
was crushed at the ankle, whereas his left foot was crushed at
the instep.

The complaint alleges that the defendant company was guilty
of negligence in permitting the wire to remain where it was,
inasmuch as it must have known that the wire was there and
that it was a source of danger to persons going to and from the
station.    But during the trial the issues in this behalf were
eliminated from the case.    The specific charge upon which re-
covery was had is the following: "That the said defendant Mc-
Donough, so acting as engineer as aforesaid, in the exercise of
reasonable care and diligence, could have seen plaintiff so upon
said track, as aforesaid, and plaintiff alleges, on information
and belief, that the said McDonough did see him on said track
as aforesaid, in seasonable time to have stopped said locomotive
and train so as to avoid striking plaintiff, but the defendant com-
pany, acting through the said McDonough as engineer, and the
said defendant McDonough, wholly failed and neglected to stop
said locomotive engine and train, and carelessly and negligently
drove and ran said locomotive engine and train upon and over
said plaintiff, so on said track as aforesaid, thereby crushing
both of his feet to such an extent that it became necessary to
amputate the same, which was thereafter done."

Counsel for defendants open the argument in their brief with
the following statement: "The question is presented on this ap-
peal whether a liability for damages exists under the doctrine of
'last clear chance,' where a person is injured upon a railroad
track, at a place where he has no right to be and where his pres-
ence could not be reasonably expected or anticipated, because
of the failure of the engineer in charge of the train to discover
such person's position and peril upon the track in time sufficient
to stop the train and avoid injuring him."    Assuming the posi-
tion that plaintiff was a trespasser upon the defendant com-
pany's track, and that the evidence fails to show that the en-

gineer actually discovered his presence there, they insist that the trial court should have directed a verdict for the defendants, because the duty to adopt any precaution to avoid injuring the plaintiff did not arise. They thus rely upon the rule of the last clear chance. Counsel for plaintiff insist that this rule has no application to the case, but that the plaintiff, having gone to the station to meet his mother and having remained there to meet his friend who was to arrive on train No. 3, he was there rightfully because there upon the invitation of the defendant company, and hence that under the rule that it is the duty of a railway company to anticipate the presence of persons about its stations when a train is arriving, including those who go to meet an incoming passenger as well as those who accompany a · departing one, and to exercise ordinary care for their safety, the engineer was under obligation to keep a constant lookout to discover plaintiff's position and thus to avoid injuring him. They also argue that the evidence shows conclusively that the engineer must actually have discovered the peril of plaintiff in time to stop the train, and hence that the defendants are liable [1] even under the rule invoked by counsel. The court was of the opinion that the rule of the last clear chance is applicable, as is shown by the following instruction, which discloses the theory of the charge submitted: "You are instructed that in this case if the engineer discovered, or in the exercise of reasonable diligence could have discovered, the position of the plaintiff on the track, if you find that he was upon the track in the manner in which he says he was, and it was apparent to the engineer that the plaintiff could not escape from the track so as to avoid being run over, the duty became imperative upon him to use all reasonable care to avoid running over the plaintiff or injuring him, and if he did not do so and the plaintiff was injured, then the defendants under such circumstances would be liable for the injuries inflicted." Counsel find no fault with the statement of the rule as embodied in the instruction. It may be remarked, however, that the rule is limited in its application to those cases only in which the plaintiff, or the person

injured or his property, has by his own act been exposed to injury at the hands of the defendant, and the defendant, after discovering the situation of the person or property in time, has failed to use ordinary care to avert the injury. (1 Thompson on Negligence, sec. 228.) A case calling for its application embodies three elements, *viz.:* (1) The exposed condition brought about by the negligence of plaintiff or the person injured; (2) the actual discovery by the defendant of the perilous situation of the person or property, in time to avert injury; and (3) the failure of defendant thereafter to use ordinary care to avert the injury. All of these elements must concur, else the rule has no application, and liability must be predicated upon the failure of defendant to discharge toward the person injured or his property, some other duty imposed by law under the facts of the particular case as they are made to appear. The duty imposed by it is, not to use ordinary care to discover the peril and also to avert the threatened injury, but to avert the injury after the perilous situation is actually discovered. It is nothing more than a qualification, by way of exception, to the general rule that·negligence on the part of plaintiff which proximately contributes to his injury will bar his recovery. So the rule is understood and applied by the courts generally. (*Davies* v. *Mann,* 10 Mees. & W. 546; *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 36 L. Ed. 485, 12 Sup. Ct. Rep. 679; *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, 35 L. Ed. 270, 11 Sup. Ct. Rep. 653; *Austin* v. *New Jersey Steamboat Co.,* 43 N. Y. 75, 3 Am. Rep. 663; *Northern Central Ry. Co.* v. *State,* 29 Md. 420, 96 Am. Dec. 545; *Vicksburg etc. Ry. Co.* v. *Patton,* 31 Miss. 156, 66 Am. Dec. 552; *Cullen* v. *Baltimore etc. R. Co.,* 8 App. D. C. 69; *Western Maryland R. Co.* v. *Kehoe,* 83 Md. 434, 35 Atl. 90; *Omaha St. Ry. Co.* v. *Cameron,* 43 Neb. 297, 61 · N. W. 606; see, also, 1 Thompson on Negligence, sec. 238; 2 Id., sec. 1735.) This court recognized and applied the rule in *Egan* v. *Montana Central Ry. Co.,* 24 Mont. 569, 63 Pac. 831, *Driscoll* v. *Clark,* 32 Mont. 172, 80 Pac. 1, 373, and *Neary* v. *Northern Pacific R. Co.,* 37 Mont. 461, 19 L. R. A. (n. s.) 446, 97 Pac. 944.

In the course of the argument in the opinion in the last
[2] case, in stating the qualification of the general rule, it was
said: "The general rule that one's own negligence in such case
precludes recovery is subject to the qualification that, where
the defendant has discovered, or should have discovered, the
peril of the plaintiff's or deceased's position, and it is apparent
that he cannot escape therefrom or for any reason does not
make an effort to do so, the duty becomes imperative for the
defendant to use all reasonable care to avoid the injury; and if
this is not done, he becomes liable, notwithstanding the negli-
gence of the injured party." The expression "or should have
discovered," as used in this passage, seems to have been under-
stood by some members of the profession in this state to imply
an obligation on the part of the defendant to maintain a look-
out at all times, to discover anyone who may be in a position
of peril, as well as to exercise due care thereafter to avoid in-
juring him, and that by an omission of this duty liability would
arise for any injury caused thereby. The use of the expression
was unfortunate and perhaps justifies the doubt entertained as
to the application this court would make thereafter of the quali-
fication of the general rule; but a careful reading of the opinion
does not, we think, justify any other conclusion than that the
statement was intended to include those cases in which the actual
discovery of the peril is a just inference from the evidence,
though denied by the defendant, as well as those cases in which
the discovery is admitted or not denied, and liability is sought
to be avoided on other grounds. Doubtless, in formulating the
instruction in this case, the trial court was laboring under the
uncertainty induced by the statement of the rule as there made.
But be this as it may, it has no application unless all of the ele-
ments heretofore enumerated appear in the case. It has no
application to this case, because there was no antecedent negli-
gence on the part of plaintiff.

A person, however, may be put in a position of peril by cir-
cumstances for which he is not responsible, and for this reason
is not chargeable with antecedent negligence. To illustrate:

Thugs may beat into insensibility and rob a man near a railroad. To destroy the evidence of their crime, they place their victim upon the track so that he may be killed by a passing train. It cannot reasonably be anticipated that anyone will be upon [3] the track at that place; yet if those in charge of a train discover his situation, it at once becomes their duty to exercise such care as they may under the circumstances to avoid injuring him. If they discover him while it is still within their power, by the exercise of ordinary care, to stop the train, they must do so, under the penalty of making themselves and their employer liable. The plaintiff in this case was on the track without his own fault; yet to say that the engineer, though seeing his peril, was not bound to exercise such care as he could to avoid injuring him, is equivalent to saying that the engineer was at liberty to take his life because he was so unfortunate as to have been forced from his place of safety on the platform, upon the track by the blow which he received from behind. In such a case the obligation to exercise reasonable care to avoid injury must be observed. Of course, if the defendant company was under obligation to keep a lookout at Huntley station, then, under the rule for which counsel for plaintiff contend, the question is not whether the engineer did discover plaintiff's position in time to avert the injury, but whether under the circumstances he ought to have discovered it. We think the weight of authority gives support to the rule that a railway company is bound to use special care and watchfulness at points upon or near its track and at its open stations where the presence of persons, especially in considerable numbers, may reasonably be anticipated. On this subject Mr. Thompson says: "At such places the railway company is bound to anticipate the presence of persons on the track, to keep a reasonable lookout for them, to give warning signals, such as will apprise them of the danger of an approaching train, to moderate the speed of its train so as to enable them to escape injury; and a failure of duty in this respect will make the railway company liable to any person thereby injured, subject, of course, to the qualification that

his contributory negligence may bar a recovery.'' (2 Thompson on Negligence, sec. 1726.)  It is a matter of common knowledge that at such places persons often do not fully appreciate the dangers incident to the coming and going of trains, or that they grow careless and inattentive to such an extent that they unconsciously fall into danger.  It is also true that when, as in this case, the approach to a station is such that its use by those endeavoring to reach or leave trains, or to go there to transact business with the company's agents requires them to cross the track, they may expose themselves to the same danger from the moving of trains as is encountered at highway crossings.  Therefore, a rule which requires the railway company to keep a lookout when its trains are approaching such places, is humane and conservative of human life.  Such a rule finds recognition in the following cases: *Thomas* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 103 Iowa, 649, 39 L. R. A. 399, 72 N. W. 783; *Eppstein* v. *Missouri Pac. R. Co.,* 197 Mo. 720, 94 S. W. 967; *Chesapeake & Ohio R. Co.* v. *Nipp's Admx.,* 125 Ky. 49, 100 S. W. 246; *Johnson* v. *Louisville & N. R. R. Co.,* 122 Ky. 487, 91 S. W. 707; *Garner* v. *Trumbull,* 94 Fed. 321, 36 C. C. A. 361; *Fleming* v. *Louisville & N. R. Co.,* 106 Tenn. 374, 61 S. W. 58; *Texas Midland R. Co.* v. *Crowder,* 25 Tex. Civ. App. 536, 64 S. W. 90; *Chesapeake & Ohio R. Co.* v. *Rodgers,* 100 Va. 324, 41 S. E. 732; *Brackett's Admr.* v. *Louisville & N. R. R. Co.,* 33 Ky. Law Rep. 921, 111 S. W. 710; see, also, note to *Martin* v. *Hughes Coal Creek Co.,* 41 L. R. A. (n. s.) 267; *Palmer* v. *Oregon Short Line R. Co.,* 34 Utah, 466, 16 Ann. Cas. 229, 98 Pac. 689.  The rule includes all persons at places where their presence may be reasonably anticipated, whether they have business relations with the railway company or not; and while those who go upon the premises [4] of the company by invitation to transact business with it are technically trespassers if they get upon the track at places away from the crossings provided for them, nevertheless the company cannot be permitted wholly to omit all precautions for their safety.  Whether or not the railway company is bound

to keep a lookout at any time depends upon the circumstances of the particular case.

This brings us to the question whether the evidence from any [5–7] point of view is sufficient to charge the defendant. Neither of the trains designated as No. 3 and No. 4 was scheduled to stop at Huntley. Both were through-trains. This fact seems to have been generally known. Whether the plaintiff knew that train No. 4 would not stop, the evidence does not disclose; he was informed, however, that train No. 3 would not stop. The only reason he had for thinking the contrary was that he had a telephone message from his friend that the latter would arrive on that train. Not having been informed by any agent of the company that the train would stop, he had no reason to think that it would. His presence at the time, then, was not by invitation of the company. In order to meet the demands of present-day conditions, railway companies may run through-trains consisting wholly of Pullman cars, provided they make suitable provision to accommodate persons who do not care to use such trains by other trains running at reasonable intervals. (*Doherty* v. *Northern Pacific R. Co.,* 43 Mont. 294, 115 Pac. 401.) For the same reason, and under like restrictions, they may run through-trains without stopping except at principal stations. In such cases it is not incumbent upon them to bring home to the public notice of their rules designating the stations at which their trains will stop in order to take on or discharge passengers. Persons desiring to know when and where such trains stop are under obligation to inquire for information from the agents of the company and to conduct themselves accordingly. The duty to keep a lookout in passing stations at remote and out of the way places, if it arises, is to be measured by the character of such places, the time of the day or night when they are reached, and other like circumstances; and if, as in this case, the station is one which is passed at an early hour in the morning when it cannot reasonably be anticipated that persons are present to become passengers or to engage in the transaction of business with the agents of the company, the company is under

no more obligation to keep a lookout than it is in the open country or at any other place where persons are not expected to be. Of course, the company may not relax the care and vigilance necessary to the safety of its passengers. The obligations in this behalf, however, do not require it to keep a lookout for those who chance to be in the way of its trains at places where their presence cannot reasonably be anticipated, whether they are technically trespassers or not. Under the circumstances disclosed here, there was no obligation to keep a lookout.

Nor do we think that the evidence justifies the conclusion that [8] the engineer discovered the position of plaintiff. According to the testimony of defendant McDonough, as he approached the station his duty under the rules of the company required him to observe the semaphore for signals and the switchlights in order to determine whether the track was clear. This duty continued until he had passed the station. He stated that as he approached the station, having reduced the speed of his train to twenty-five miles per hour, he was observing the semaphore above and beyond the station for signals; that he was also observing the switchlight at the junction of the track with that of the Chicago, Burlington & Quincy Railway, which was also beyond the station, incidentally watching the line of track as it was disclosed by the headlight, and that he did not discover any object upon the track at all. There was evidence to the effect that the body of a man lying on the track could be distinguished as such probably from a distance of 350 to 400 feet, a space amply sufficient to give the engineer time in which to stop the train when going at the rate of twenty-five miles an hour. Whether a person crossing the track in the position in which plaintiff was could be seen, to quote the words of an experienced engineer who was examined by the plaintiff, "would depend on whether or not a man's vision was directed away from the rail for an instant. It could be seen between five and six hundred feet if he was looking at nothing else, and would accordingly see the object." The witness stated further: "If the engineer's attention was called to the object as he drew nearer to it, he

could discern something as to what it was. At a distance of 400 feet the object would have to move quite a little; something so that it would draw his attention. It would have to move enough so that he could see what it was. He would have to get within two or three hundred feet of it to see whether it was a dog or a person. At a distance of three hundred feet the light would be of such a character that if he saw the object he could tell whether it was a dog or a person. If a man's vision caught that object I would say he could tell what it was within two or three hundred feet of it.'' This witness also stated that supposing the plaintiff had gotten his body entirely off the rail, except his right foot, whether the engineer could see the foot would depend ''a whole lot'' upon the nature of the place, ''whether the end of the ties stuck above the ground, *    *    * whether it was a smooth place, *    *    * whether or not there was a dip,'' and whether or not he got a glimpse of it by reason of its movement. It may be added that the condition of vegetation along the track, if there was in fact any there, the shadows cast by the light and other similar conditions might have been considered as affecting the opinion expressed by the witness if they had been called to his attention. What the conditions actually were the evidence does not disclose. Taking into consideration the fact that the engineer was not required to keep a lookout for persons on the track; that his attention was necessarily directed to the semaphore and the junction lights; that as soon as the plaintiff fell upon the track he hastened as rapidly as he could to crawl across it; and that at the moment of the collision his right foot only was over the line, the qualified opinion of this witness and one other who gave similar testimony, was not, we think, evidence sufficient to justify the conclusion that the engineer saw the plaintiff at all. Besides, if plaintiff's own account of his situation is to be accepted as true, the engineer, though he saw plaintiff's foot upon the rail, was not bound to make an effort to stop the train; for he could not anticipate that anything would then interfere to prevent

plaintiff from getting entirely clear of the track before the train would reach him.

The district court should have directed a verdict for the defendant. The judgment and order are accordingly reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.


ON MOTION FOR REHEARING.

(Submitted November 17, 1913.   Decided December 24, 1913.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

It is said by counsel for plaintiff in the brief accompanying their motion for a rehearing, that the court based its decision upon a proposition that was not argued orally nor discussed in the briefs, *viz.:* that "train No. 3, not being scheduled to stop at Huntley station, the engineer was not required to keep a reasonable lookout and to that extent owed no duty to respondent on the track, although not there as a trespasser." It is now insisted that since Huntley is a union station, it was the duty of the engineer, as a matter of law, to anticipate the presence of persons there at any time and keep a reasonable lookout for them, because, though trains Nos. 3 and 4 were not scheduled to stop, trains upon the Chicago, Burlington & Quincy Railway, either on schedule time or belated, might be there, receiving or discharging passengers. The evidence does not disclose anything touching the movement of trains on the latter railway. It may be that the schedule was such that trains reached and left the station only in the daytime, and that at the hour at which defendant's train reached the station it could not reasonably be anticipated that anyone would be there. If this was the fact, the duty to keep a lookout did not arise, for it cannot be said, as a matter of law, that it is the duty of a railway company to keep a lookout without reference to conditions existing at the

particular place.   The burden rested upon the plaintiff to show
that he received his injuries through the negligence of the de-
fendant.   In order to do this he must have disclosed facts and
circumstances furnishing a basis for an inference that he would
not have suffered injury but for a violation of duty owed him
by the defendant.   If it was the fact that the movement of
trains on either railway was such that the presence of persons
at the station at all hours of the day or night should reasonably
have been anticipated, and the corresponding duty arose to keep
a lookout at all times, it was a part of plaintiff's case to show
this.   As we have said, there was no evidence as to the movement
of trains on the Chicago, Burlington & Quincy Railway.   Indeed,
the trial of the case was conducted upon the theory, not that
the defendant owed to the plaintiff the duty to anticipate his
presence and keep a lookout for him, but on the theory that the
engineer actually discovered his peril and failed to exercise
reasonable precautions to avoid injuring him.   We held that the
evidence does not disclose any liability on this theory.   In other
words, we determined the case on the theory upon which it was
tried in the court below.   If upon another trial the evidence
discloses circumstances which imposed upon the engineer in
charge of train No. 3 the duty to keep a lookout as he approached
the station, a case may be made for the jury as to whether he did
so, and whether, under the circumstances, he might, by the exer-
cise of ordinary care, have averted the injury.   Otherwise plain-
tiff cannot recover.

Counsel have entered into a discussion of the last clear chance
rule and its application to particular cases suggested.   In the
original opinion we distinguished generally the cases in which
it applies from those in which it does not.   We think the rule
is stated there as it is generally accepted and understood, and
does not in any way limit the liability of a railway company for
the failure of those in charge of its trains to keep a lookout
upon approaching public crossings, or stations, or any other
places where the presence of persons must reasonably be antici-
pated.   Counsel would have us lay down a rule by which the

railway company is required to keep a lookout at all places along the line of its track. There are cases which announce this doctrine; but the great weight of authority is opposed to it. In the absence of legislation exacting such a requirement, we do not feel disposed to recognize it.

The motion is denied.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.