## AYDELOTTE & YOUNG v. SAUNDERS, Adm'x.

No. 26139. Jan. 18, 1938.

Rehearing Denied March 8, 1938.

W. E. Green and J. C. Farmer, for plaintiffs in error.

Lewis & Walker and Speakman & Speakman, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of defendant in error in an action for damages for wrongful death.

Plaintiff's decedent was killed in a collision between an automobile in which he was riding and a truck being driven by C. B. Young. The truck belonged to J. M. Aydelotte and C. B. Young, a copartnership do-

ing business under the firm name of Aydelotte & Young. Said partnership was engaged in the business of selling gasoline at retail. The truck was being used to haul gasoline from the refinery at Bristow, Okla., to their place of business.

On the morning of June 14, 1933, plaintiff's decedent, J. B. Saunders, was invited to ride with one Charlie Brummett, as his guest in Brummett's automobile, from Sapulpa to Brummett's farm some miles west of Sapulpa. While so riding and while going west along the paved highway a short distance west of Sapulpa, the automobile collided with the truck being driven by Young and going east towards Sapulpa. As a result of the collision Saunders was fatally injured. He was taken to a hospital at Sapulpa, where he died early the next morning.

Plaintiff, having been appointed as administratrix of his estate, brought this action for damages, setting up two causes of action, one for the death of Saunders and one for his conscious pain and suffering.

The petition alleged that said truck was equipped with a 600-gallon tank filled with gasoline; that the said truck was being operated at an excessive, unreasonable, dangerous, and unlawful rate of speed under the circumstances, viz., 40 or 45 miles per hour. It further alleged:

"That as the car in which the deceased was riding proceeded westward a sudden and unexpected emergency arose in that a car going in the same direction passed around the car in which deceased was riding and on account of some vehicles in front of the same, including a farm wagon, it came to almost a complete stop directly in front of the said automobile in which the deceased was riding; that in order to avoid a collision with such car last mentioned the said Charlie Brummett attempted to pull his said automobile to the extreme left; that the said C. B. Young saw and observed the perilous position in which the deceased was placed and by the exercise of reasonable care could have known and appreciated the danger in which he was placed at the time, but notwithstanding such fact and notwithstanding the opportunity which the said defendant had to avoid a collision by applying the brakes or driving in such a manner as to avoid a collision, the defendant continued to drive and operate said truck, propelled by the momentum of the load of gasoline hereinabove described, at, toward and against the car in which the deceased was riding, striking such automobile near the right hand front door thereof, at and near which the deceased was riding, thereby inflicting certain mortal wounds upon the body and head of the deceased, of which the deceased languished and died about 24 hours thereafter."

Defendants filed a demurrer to the petition which was overruled, whereupon they filed an answer consisting of a general denial.

Plaintiff introduced her evidence and defendants demurred thereto. The demurrer was overruled, and defendants introduced their evidence. They then moved for a directed verdict, which was overruled. The jury returned a verdict for plaintiff, and judgment was entered accordingly, and defendants appeal.

There is little conflict in the evidence as to how the collision occurred. The uncontradicted evidence is that Saunders was riding in the automobile as a guest of Brummett. Brummett was driving his automobile himself. While going west along the highway about two miles out of Sapulpa, Brummett, while driving about 35 miles per hour, was about to overtake others going along the highway in the same direction. There were one or two wagons, drawn by horses. Behind this was one or possibly two automobiles all being driven along on the north half of the paved road.

At the same time defendants' truck was approaching from the west. Shortly before Brummett's automobile came up with the one in front of him, another automobile being driven at a rather rapid rate of speed came on from behind, turned out to the left and drove past Brummett's automobile. It then cut in in front of Brummett, and suddenly slowed down. Brummett was then so close to that car that it was impossible for him to stop his automobile or slow it down sufficiently to avoid a collision. He slackened the speed all he could, but seeing he was about to strike the automobile in front of him, he cut suddenly to the left and ran diagonally across the south part of the pavement. As he was about to leave the paved part of the highway and go onto the shoulder along the south side, the truck struck his automobile inflicting the injuries upon Saunders from which he died.

There is conflict in the evidence as to the rate of speed at which the truck was being driven and as to the distance the truck was from Brummett's automobile when Brummett cut across to the left. Defendant Young testified that he was driving 20 or 25 miles per hour, and that he was about 25 or 30 feet west of Brummett's automobile when it cut across the pavement. Brummett testified that he did not see the truck approaching until after he had cut out to the

left and that it was then about 20 or 25 feet from him, and that it struck his automobile before he could get off of the pavement. He had applied his brakes and released the clutch and thereby slowed down his own car.

Other witnesses placed the rate of speed of the truck from 40 to 50 miles per hour and some of these witnesses testified that the truck was about 200 feet from Brummett's automobile when Brummett cut out across the south half of the pavement.

The highway was straight and the view was unobstructed for several hundred feet both ways from the point where the collision occurred, except for the vehicles ahead of Brummett's automobile as noted above.

Defendants first contend that all the evidence tending to show that the truck was any considerable distance from the Brummett automobile when Brummett cut across the pavement to the left and in the path of the oncoming truck should be disregarded because in conflict with the physical facts which are undisputed.

The contention is that because the truck struck the Brummett automobile before it had time to get clear across and off of the pavement, which was only about 18 feet wide, the truck could not possibly have been a distance of 200 feet away at the time the automobile cut across its path. That, of course, depends upon how fast the Brummett automobile was moving while cutting diagonally across the south half of the pavement. On this question the evidence is somewhat in conflict. Brummett testified that just before the emergency arose which caused him to cut across the pavement he was driving about 35 miles per hour. Another witness, probably the driver of the automobile that cut around and in front of Brummett's car, testified that when the automobile cut around in front of him and came almost to a stop, he, Brummett, applied the brakes to his own car and released the clutch, and thus slowed down his own car and the truck struck it before he had time to get across the pavement. So there are no admitted or proved physical facts which make it necessary to disregard the evidence of some of the witnesses tending to show that the truck was some 200 feet away when Brummett cut across the pavement. True both Brummett and Young, the drivers of the car and the truck, respectively, testified that the truck was only 25 or 30 feet or less away when Brummett cut in front of it. But this is the very point about which the evidence is in conflict and presented a

question for the jury. We cannot say as a matter of law that there are such admitted or proved physical facts as to render it necessary to disregard the testimony of the witnesses tending to prove that the truck was approximately 200 feet away when Brummett cut across to the left.

In this connection defendants contend: "The last clear chance doctrine does not apply."

In a strict sense this doctrine is not applicable. It has as its support a broad principle of public policy, that the individual is entitled to the fullest protection which society can give. To this end the doctrine supports the right of recovery for a personal injury caused by the defendant's negligence notwithstanding the plaintiff's own negligence exposed him to the risk of injury, where it appears that such injury was more immediately caused by the defendant's omission, after becoming aware of plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. It is often said that the doctrine of last clear chance presupposes contributory negligence on the part of plaintiff. Burlie v. Stephens (Wash.) 193 P. 684.

In Dahmer v. Northern Pac. Ry. Co. (Mont.) 136 P. 1059, the question of whether the doctrine was there applicable is discussed, it is said:

"A case calling for its application embodies three elements, viz.: (1) The exposed condition brought about by the negligence of plaintiff or the person injured; (2) the actual discovery by the defendant of the perilous situation of the person or property, in time to avert the injury; and (3) the failure of defendant thereafter to use ordinary care to avert the injury. All of these elements must concur, else the rule has no application, and liability must be predicated upon the failure of defendant to discharge toward the person injured or his property some other duty imposed by law under the facts of the particular case as they are made to appear."

In this case it cannot be said that plaintiff's decedent, J. B. Saunders, was guilty of contributory negligence. Under the uncontradicted evidence he was an invited guest of Brummett. He had no control whatever over the operation of the automobile in which he was riding. Therefore, conceding that Brummett acted negligently, his negligence was not imputable to Saunders. Therefore, the first of the three elements generally said to be essential for the application of the doctrine of last clear chance is absent. However, a person may be put in a position of peril by circumstances for

which he is not responsible, and for this reason is not chargeable with antecedent negligence. If in such case his peril be discovered by another whose act may injure him and the discovery be made in time to avoid injury by the use of ordinary care, and such care is not exercised, and as a result thereof the party so placed in peril is injured, the party causing the injury is liable in damages. Dahmer v. Northern Pac. Ry. Co., supra. The decedent in this case was suddenly cast in a position of peril in the path of the oncoming truck without any fault or negligence on his part. Yet to say that the driver of the truck, though seeing his peril, in time to avoid injury, if such be the case, was not bound to exercise such care to avoid the injury as an ordinarily prudent person would exercise in such circumstances is equivalent to saying that the driver of the truck was at liberty to take his life because he was placed in the position of peril by the act of another, for whose act he was not responsible. It is clear that in such case the obligation to exercise ordinary care to avoid injury rested upon the driver of the truck. Dahmer v. Northern Pac. Ry. Co., supra.

The same obligation would rest upon the driver of the truck after discovery of peril whether the peril was brought about by the negligence of the injured party or by the act of a third party.

Though the court may have been in error technically in telling the jury that the case was one predicated upon the doctrine of last clear chance, the instruction clearly stated the law relative to "discovered peril." But defendants requested the instructions under which the court told the jury that the case was one predicated upon the doctrine of last clear chance. Instructions 9 and 10 were given in the exact language requested by defendants. These were the instructions under which the question was presented to the jury.

Defendants are in no position to complain of any error therein.

Plaintiff requested an instruction, which the court gave, to the effect that if the jury should find from a preponderance of the evidence that defendant was carelessly and negligently operating its truck at a rate of speed which was in excess of the rate permitted by statute, that is, greater than was reasonable and proper, having due regard to the traffic, surface, and width of the highway and other conditions then existing, and greater than would permit the driver thereof to bring it to a stop within the assured clear distance ahead, and that such careless and negligent acts were the proximate cause of the collision and resulting injury, and that deceased was free from any negligence on his part which in any way contributed to the proximate cause of the injury, and if the jury should further find that the widow of deceased suffered any damage by reason thereof, the verdict should be for the plaintiff.

Defendants excepted thereto, and contend that the speed of the truck was not the proximate cause of the injury, and therefore its speed was immaterial.

Operating an automobile on the highway in excess of the rate of speed permitted by law does not of itself create liability. It must be the proximate cause of the injury in order to create liability. "Excessive speed of an automobile does not lead to liability unless it was the proximate cause of damage." O'Malley v. Eagan (Wyo.) 2 P. (2d) 1063.

Speed, considered by itself, cannot be said to have necessarily contributed to a given accident. But it may be a contributing cause. Under certain conditions it may be in some cases the proximate cause.

In many, perhaps a majority of automobile accidents, unlawful speed is, or may reasonably be said to be, a contributing cause.

There was evidence in this case, when considered with all the surrounding circumstances and attending conditions, from which the jury might have found the speed of the truck was unreasonable under the circumstances, and that it was an element which contributed to the proximate cause of the collision and resulting injury. After all, one of the questions for the jury was the proximate cause of the collision. There was some evidence tending to show that it may have been failure to use ordinary care after discovery of the peril. There was also some evidence tending to show that the proximate cause of the collision may have been the rate of speed at which the truck was being operated immediately before the collision.

The court submitted both theories to the jury for its decision.

Whether there is any evidence tending to prove a state of facts which would create liability under a given theory is one of law for the court, but the question of whether the state of facts has been established is one for the jury where the evidence is in conflict. There was conflict in the evidence in this case as to both theories. It is not

clear upon which theory the jury based its verdict, but there was some evidence in support of either.

We find no substantial error.

The judgment is affirmed.

OSBORN, C. J., and WELCH, GIBSON, HURST, and DAVISON, JJ., concur. BAYLESS, V. C. J., and CORN, J., dissent. PHELPS, J., absent.