**Mary P. WHITNEY, Administratrix of the Estate of E. W. Whitney, Deceased, Plaintiff in Error,**

v.

**A. B. DOUGLAS, Defendant in Error.**

No. 37412.

Supreme Court of Oklahoma.

Feb. 12, 1957.

Butler, Rinehart & Morrison, Oklahoma City, for plaintiff in error.

A. S. Wells, Seminole, Tom C. Greer, Wewoka, for defendant in error.

HALLEY, Justice.

This is an action filed in the District Court of Seminole County, Oklahoma, by A. B. Douglas against E. W. Whitney to recover damages for personal injuries alleged to have been the result of the negligence of the defendant in driving his automobile in a reckless manner while plaintiff was a passenger therein on the night of December 13, 1954. Judgment was rendered in favor of the plaintiff in the sum of $3,000, based upon a jury verdict for that amount, on April 11, 1956. The defendant, E. W. Whitney, has appealed. He died May 11, 1956, and Mary P. Whitney,

as administratrix of his estate, was substituted as defendant. We shall refer to the parties by name or as plaintiff and defendant as they appeared in the trial court.

The general facts are that on the 13th of December, 1954, the defendant, E. W. Whitney, an attorney of Wewoka, Oklahoma, and the plaintiff, A. B. Douglas, a real estate broker, were near Seminole, Oklahoma, doing some appraisal work. About 7 P.M., when it was dark, they started to return to Wewoka in Whitney's car and Douglas was a passenger of Whitney's. While driving along Highway 270 in an easterly direction about six and one-half miles west of Wewoka, they topped the crest of a hill and a horse suddenly appeared on the right-hand side of the road apparently headed in a northerly direction. This was a black-top road. The horse was struck by the car in the south or right-hand lane and carried about ninety feet. When it was dropped off on the right-hand side of the road the car proceeded down the road about 179 feet further and came to a stop on the north side of the pavement.

The parties to this action were the only eye witnesses to the accident. Whitney claimed that he was driving about fifty miles per hour while Douglas estimated that the car was being driven sixty to sixty-five miles per hour when the collision occurred and that after leaving Seminole he had warned Whitney twice that he was driving too fast and advised him to slow down. This was denied by Whitney.

Douglas alleged that as a result of the collision he was thrown violently against the front of the car and suffered serious and permanent injuries, consisting of a hernia on his right side, injuries to his right knee, his right arm and also damage to his spine extending through his second and fifth cervical vertebrae. He alleged that these injuries were permanent and disabling; that he was earning $200 to $300 per month in the real estate business and in good health prior to his injuries, which had rendered him unable to work; that he had lost his earning power and had incurred drug and doctors' bills, and that three doctors had found his injuries permanent and advised him that he would suffer from such injuries for the remainder of his natural life; that for four weeks after the accident he suffered severe pains, was unable to sleep or rest and had to remain in a chair or bed.

He further alleged that he had already incurred medical and hospital bills in the sum of $393 and that he will be compelled to employ physicians and purchase drugs in the future to the amount of $3,000. He alleged that his injuries were the result of the negligence of the defendant in driving his car in the nighttime at a high and dangerous rate of speed of sixty miles per hour; in failing to keep his car under such control as to be able to stop within the clear scope of his vision; and in driving his car into and against a horse on the highway and thereby throwing the plaintiff violently against portions of the car which caused his injuries which were the direct result of the plaintiff's negligence.

The defendant admitted the accident but denied that his negligence was the cause of the collision which was unavoidable. He charged contributory negligence on the part of the plaintiff in failing to warn him of the presence of the horse on the highway, and in an amended answer it was alleged that the parties were engaged in a joint enterprise and that defendant's negligence would be imputed to the plaintiff. This last allegation was not urged in the brief of the defendant.

All of defendant's assignments of error are submitted in two propositions, the first of which is as follows:

"The only allegations by plaintiff as to proximate cause went to the speed and the manner in which defendant was driving his vehicle and it was clearly and conclusively shown by both plaintiff's and defendant's proof that such were not the proximate cause of the accident and plaintiff's injuries, and the verdict, therefore, should have been for defendant."

The above contention is based upon the assertion that the evidence clearly proved that the speed at which defendant was driving his car and his manner of operating the car at the time of the accident were not the proximate cause of the accident. In support of this assertion the defendant cites numerous decisions from other States but only two decisions from Oklahoma. We find that the Oklahoma cases cited are not applicable because they involve a different state of facts.

The plaintiff cites Miller v. Dobbs, 180 Okl. 576, 71 P.2d 737, 738, which involved the killing of a mule that had strayed upon the highway at night. The defendant there was driving about fifty miles per hour. He saw two mules walking single file across the highway about 125 feet in front of his car. Being unable to stop his car, he turned to pass the mules but one of them wheeled in front of his car and was killed. This court stated the applicable law as follows:

" * * * The defendant was required to operate his car in conformity with the provisions of section 14, chapter 113, S.L.1933 (47 Okl.St.Ann. § 92) which so far as pertinent read as follows: 'Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.' "

█ Again in Cushing Refining & Gasoline Co. v. Deshan, 149 Okl. 225, 300 P. 312, 317, in the fifth paragraph of the syllabus it is said:

"It is the duty of a driver of an automobile traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision."

In the body of that opinion it is said:

"The rule that a person traveling upon a highway has a right to assume that all other persons using the highway will obey the law and that one is not bound to keep a look-out for others who may violate the law applies only to those cases where the automobile is being driven in conformity to the law and not in violation thereof, and it has no application where the automobile is being driven in a negligent manner, where it is not properly equipped with lights, or where it is being driven at an excessive rate of speed. In those instances the primary negligence of the driver of the automobile renders inoperative the rule stated."

The foregoing clearly sets out the rule in Oklahoma as it is also announced in Vammen v. Kinsey, 181 Okl. 92, 72 P.2d 497. The rule applicable to property damage is no different when applied to personal injuries. We will follow the rule as established by decisions of this court based upon what is now Section 121.3, 47 O.S. 1951.

In the case before us the plaintiff testified that on the evening when the accident occurred he had told the defendant that he was driving too fast and twice suggested that he slow up, the last time he reminded the plaintiff was immediately before the accident. He testified that in his opinion, based upon years of experience that Whitney was driving sixty-five miles per hour when he hit the horse, and had been driving at sixty miles per hour, which was a violation of the speed laws for night driving. Whitney denied this and estimated that his speed was about fifty miles per hour.

The highway patrolman, Charles Dawson, testified that the horse was dragged about ninety feet after being struck by the

car and that the car then went 179 feet further down the highway and landed on the north side when it stopped.

In Knox v. Loose-Wiles Biscuit Company, 194 Okl. 611, 154 P.2d 59, this court quoted from Aydelotte & Young v. Saunders, 182 Okl. 226, 77 P.2d 50, 54, as follows [194 Okl. 611, 154 P.2d 62]:

" 'Operating an automobile on the highway in excess of the rate of speed permitted by law does not of itself create liability. It must be the proximate cause of the injury in order to create liability. "Excessive speed of an automobile does not lead to liability unless it was the proximate cause of damages." * * *' "

It is also stated in that case that:

"* * * Whether a driver is guilty of excessive speed depends upon the conditions specified or contemplated in the statute, and is a question of fact for the jury. * * *"

■ The defendant himself testified that he first saw the horse some fifty or sixty feet in front of him and that his best judgment was that he hit his brake just as he hit the horse in the south lane of the highway; that he did not turn left because the horse appeared to be moving north; that he did not see the horse until he started down the hill because up to that time his headlights would shine over any·object in the road the size of a horse, and that he did not expect to see a horse or any other object in the road where the horse was. He denied that the plaintiff had complained or warned him of excessive speed but admitted that he drove over the crest of a hill at a speed of fifty miles per hour when his headlights would not disclose what was in his lane of the highway until he started down the hill. This admission by the defendant together with the testimony as to the speed at which defendant was driving necessitated the submission of the case to the jury.

■ The defendant complains under his second proposition that the court failed to correctly instruct the jury. One item was that the pleadings were not evidence. This is not necessary. The court did tell the jury that the plaintiff would have to prove all of the allegations upon which he relied. It it also contended that there was prejudicial error in failing to require the plaintiff to prove by expert testimony the cost of medical expense that would probably be incurred in the future. Two doctors testified positively that the plaintiff would incur future pain and suffering and would have to incur additional medical expense in the future.

In his petition plaintiff had alleged that he would continue to have to employ physicians and surgeons and incur medical and hospital bills in the sum of $3,000. He alleged that he had already incurred such bills in the sum of $393. The evidence showed that one doctor had a medical bill against the plaintiff for $640 and that the plaintiff owed $40 or $50 to another physician. There is ample medical testimony to justify a verdict much larger than $3,000 for pain and suffering already incurred by the plaintiff and to support his allegation that his injuries were permanent. Plaintiff was a man over seventy years of age but had been in excellent health and earning a fair income as a real estate broker, but was rendered unable to work after the accident.

■ We think the court should have required expert testimony as to the probable medical expense that would be incurred by the plaintiff in the future, but in view of the evidence before us we do not think that such error justifies a reversal in view of the smallness of the verdict. This judgment is justified as to amount from the evidence of pain and suffering already incurred by the plaintiff and his inability to earn after the accident.

■ We have read all of the instructions given in this case and find that they fairly cover the issues in this case with the exception noted which was harmless. This case was clearly one for the jury and was

well tried. There is nothing occurring therein which justifies a reversal.

The judgment is affirmed.

WELCH, C. J., and DAVISON, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.